# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | |
|---|---|
| KIM SCHELLING, Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiff, | Case No. 4:23-cv-04565 |
| v. | **DEFENDANTS' MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT** |
| MICROVAST HOLDINGS, INC., YANG WU, CRAIG WEBSTER, SASCHA KELTERBORN, SHANE SMITH, and ZACH WARD, | |
| Defendants. | |

# <u>TABLE OF CONTENTS</u>

STATEMENT OF NATURE AND STAGE OF THE PROCEEDING .......................................... 1

STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT ....................................... 1

INTRODUCTION AND SUMMARY OF ARGUMENT ............................................................ 1

FACTUAL BACKGROUND ..................................................................................................... 3

LEGAL STANDARD ................................................................................................................ 7

ARGUMENT ............................................................................................................................. 8

    I.   Plaintiffs Fail to Allege a Materially False or Misleading Statement................................... 8

        A.  The Court Should Dismiss the DOE Grant Statements. .................................................... 8

            1.   Pure Omissions Are Not Actionable Under Rule 10b-5. ..................................... 9

            2.   All the Allegedly "Concealed" Information Was Disclosed. ........................... 11

        B.  The Court Should Dismiss the Clarksville Facility Statements ................................... 13

            1.   Plaintiffs Do Not Allege Facts Showing that Statements About Construction and Equipment Were False When  Made. .............................................................. 13

            2.   Defendants' Statements Would Not Mislead a Reasonable Investor. ............... 14

        C.  Corporate Puffery is Immaterial as a Matter of Law. .................................................. 16

    II.  Forward-Looking Statements are Protected by the PSLRA Safe Harbor. ........................... 17

    III. The Complaint Does Not Raise a Strong Inference of Scienter. ......................................... 20

        A.  Plaintiffs Do Not Allege Any Motive for Fraud. ......................................................... 20

        B.  Plaintiffs Fail to Allege Scienter for the DOE Grant Statements. .............................. 21

        C.  Plaintiffs Fail to Allege Scienter for the Clarksville Facility Statements. .................. 24

        D.  The Opposing Inferences in Defendants' Favor Are More Cogent and Compelling. .................................................................................................................. 29

    IV. Plaintiffs Fail to Plead a Section 20(a) Claim Against the Individual Defendants. ............. 30

CONCLUSION ........................................................................................................................ 30

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ABC Arbitrage Plaintiffs Grp. v. Tchuruk*,
   291 F.3d 336 (5th Cir. 2002) ............................................................................8, 24

*Abrams v. Baker Hughes, Inc.*,
   292 F.3d 424 (5th Cir. 2002) ...................................................................................7

*In re Alamosa Holdings, Inc. Sec. Litig.*,
   382 F. Supp. 2d 832 (N.D. Tex. 2005) ...................................................................20

*In re Aratana Therapeutics Inc. Sec. Litig.*,
   315 F. Supp. 3d 737 (S.D.N.Y. 2018)....................................................................17

*In re ArthroCare Corp. Sec. Litig.*,
   726 F. Supp. 2d 696 (W.D. Tex. 2010)...................................................................27

*In re Bank of Am. AIG Disclosure Sec. Litig.*,
   980 F. Supp. 2d 564 (S.D.N.Y. 2013)....................................................................30

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988)..................................................................................................9

*Carlton v. Cannon*,
   184 F. Supp. 3d 428 (S.D. Tex. 2016) ...................................................................19

*City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*,
   686 F. Supp. 2d 404 (D. Del. 2009).......................................................................22

*Coates v. Heartland Wireless Commc'ns, Inc.*,
   100 F. Supp. 2d 417 (N.D. Tex. 2000) ...................................................................26

*Congregation of Ezra Sholom v. Blockbuster, Inc.*,
   504 F. Supp. 2d 151 (N.D. Tex. 2007) ...................................................................18

*Dawes v. Imperial Sugar Co.*,
   975 F. Supp. 2d 666 (S.D. Tex. 2013) ...................................................................27

*Delaware Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*,
   620 F. Supp. 3d 603 (S.D. Tex. 2022) ...................................................................21

*In re Dell Inc., Sec. Litig.*,
   591 F. Supp. 2d 877 (W.D. Tex. 2008)...................................................................30

*Fin. Acquisition Partners LP v. Blackwell*,
440 F.3d 278 (5th Cir. 2006) ................................................................................7

*Firefighters Pension & Relief Fund v. Bulmahn*,
53 F. Supp. 3d 882 (E.D. La. 2014)..............................................................19, 26

*Firefighters Pension & Relief Fund v. Bulmahn*,
147 F. Supp. 3d 493 (E.D. La. 2015)..................................................................18,

*Grove Holding Corp. v. First Wis. Nat'l Bank*,
803 F. Supp. 1486 (E.D. Wis. 1992)....................................................................23

*Heck v. Orion Grp. Holdings, Inc.*,
468 F. Supp. 3d 828 (S.D. Tex. 2020) .................................................................13

*Hohenstein v. Behringer Harvard Reit I, Inc.*,
No. 3:12-CV-3772-G, 2014 U.S. Dist. LEXIS 40759 (N.D. Tex. Mar. 27,
2014) ....................................................................................................................12

*Hopson v. MetroPCS Commc'ns, Inc.*,
No. 3:09-CV-2392-G, 2011 WL 1119727 (N.D. Tex. Mar. 25, 2011)...................20

*Indiana Elec. Workers' Pension Tr. Fund IBEW v. Shaw Grp., Inc.*,
537 F.3d 527 (5th Cir. 2008) .........................................................10, 20, 24, 25

*Izadjoo v. Helix Energy Sols. Grp., Inc.*,
237 F. Supp. 3d 492 (S.D. Tex. 2017) ...........................................................18, 22

*Kapps v. Torch Offshore, Inc.*,
379 F.3d 207 (5th Cir. 2004) ..............................................................................15

*In re KBR, Inc. Sec. Litig.*,
2018 WL 4208681 (S.D. Tex. Aug. 31, 2018) .....................................................10

*In re Keyspan Corp. Sec. Litig.*,
383 F. Supp. 2d 358 (E.D.N.Y. 2003) .................................................................13

*Lain v. Evans*,
123 F. Supp. 2d 344 (N.D. Tex. 2000) .................................................................16

*Local 731 Int'l Bhd. of Teamsters Excavators & Pavers Pension Tr. Fund v.
Diodes, Inc.*,
810 F.3d 951 (5th Cir. 2016) ..............................................................................20

*Lovelace v. Software Spectrum*,
78 F.3d 1015 (5th Cir. 1996) ................................................................................3

*Macquarie Infrastructure Corp. v. Moab Partners*,
601 U.S. 257 (2024)..............................................................................................9

*Mei Pang v. Levitt,*
    No. 1:22-cv-01191-DAE, 2023 U.S. Dist. LEXIS 227786 (W.D. Tex. Dec. 20,
    2023) ...................................................................................................................19

*Naglich v. Applied Optoelectronics,*
    436 F. Supp. 3d 954 (S.D. Tex. 2020) .................................................................18

*Oklahoma Firefighters Pension and Retirement System v. Six Flags Entertainment*
    *Corp.,*
    58 F.4th 195 (5th Cir. 2023) .........................................................................24, 25

*Owens v. Jastrow,*
    789 F.3d 529 (5th Cir. 2015) ...............................................................................23

*Parker v. Hyperdynamics Corp.,*
    126 F. Supp. 3d 830 (S.D. Tex. 2015) .................................................................14

*In re Pfizer, Inc. Sec. Litig.,*
    538 F. Supp. 2d 621 (S.D.N.Y. 2008) .................................................................23

*In re Plains All Am. Pipeline, L.P.,*
    245 F. Supp. 3d 870 (S.D. Tex. 2017) ...............................................1, 15, 21, 28

*Police & Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline, L.P.,*
    777 F. App'x 726 (5th Cir. 2019) ........................................................................16

*In re Reliant Sec. Litig.,*
    No. H-02-1810, 2004 U.S. Dist. LEXIS 27951 (S.D. Tex. Jan. 16, 2004) ...........27

*Ret. Sys. of Mich. v. Pier 1 Imports, Inc.,*
    935 F.3d 424 (5th Cir. 2019) .................................................................................7

*Rosenzweig v. Azurix Corp.,*
    332 F.3d 854 (5th Cir. 2003) ...............................................................................17

*San Antonio Fire & Police Pension Fund v. Syneos Health Inc.,*
    75 F.4th 232 (4th Cir. 2023) ...............................................................................30

*Southland Sec. Corp. v. INSpire Ins. Sols. Inc.,*
    365 F.3d 353 (5th Cir. 2004) .................................................................19, 21, 30

*In re Telefonaktiebolaget LM Ericsson Sec. Litig.,*
    675 F. Supp. 3d 273 (E.D.N.Y. 2023) .................................................................10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    551 U.S. 308 (2007) ..........................................................................................8, 29

*Town of Davie Police Pension Plan v. Pier 1 Imps., Inc.,*
    273 F. Supp. 3d 650 (N.D. Tex. 2017) ...............................................................17

*Tuchman v. DSC Commc'ns Corp.*,
    14 F.3d 1061 (5th Cir. 1994) ........................................................................7, 21

*Wu Winfred Huang v. EZCORP, Inc.*,
    259 F. Supp. 3d 563 (W.D. Tex. 2017)................................................................27

**Statutes**

15 U.S.C. § 78u-4 ...........................................................................................................20

15 U.S.C. § 78u-5(i)(1)(B)..............................................................................................17

15 U.S.C. § 78u-5(c)(1)(A) (i) .......................................................................................17

Private Securities Litigation Reform Act.................................................1, 7, 17, 19

Securities Exchange Act of 1934 Section 10(b) ............................................7, 8, 9, 30

Securities Exchange Act of 1934 Section 20(a) .......................................................30

**Other Authorities**

Rule 10b-5......................................................................................................1, 9, 10

Rule 10b-5(a) ..........................................................................................................7

Rule 10b-5(c) ..........................................................................................................7

Federal Rule of Civil Procedure 9(b)...................................................................23

Microvast Holdings, Inc. ("Microvast") and Yang Wu, Craig Webster, Sascha Kelterborn, Shane Smith, and Zach Ward (collectively, the "Individual Defendants") move to dismiss the Amended Class Action Complaint ("Complaint"), Dkt. 30.

## STATEMENT OF NATURE AND STAGE OF THE PROCEEDING

This is a motion to dismiss a putative class action brought under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder.

## STATEMENT OF ISSUES TO BE RULED UPON BY THE COURT

Whether the Complaint should be dismissed for failure to plead (1) an actionable false or misleading statement, or (2) scienter, with the particularity required by Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PSLRA").

## INTRODUCTION AND SUMMARY OF ARGUMENT

The Court should dismiss the Complaint because it does not satisfy the heightened requirements for pleading securities fraud under the PSLRA. The Complaint trades on anti-Chinese sentiment, conspiracy theories, and political posturing—not particularized facts identifying material misstatements made with an intent to defraud.

Plaintiffs' first theory of fraud is that Microvast failed to disclose its business operations in China in its application to the U.S. Department of Energy ("DOE") for a $200 million grant to build a battery plant in Hopkinsville, Kentucky, and thereby concealed the risk that DOE would terminate negotiations for the grant. This allegation is hopelessly deficient.

First, as the Supreme Court recently held in *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, pure omissions are not actionable under Rule 10b-5. Plaintiffs allege a pure omission twice removed—they contend that Microvast concealed from investors the risk that the DOE would terminate grant negotiations because the grant application omitted information about

the Company's China operations. But Microvast never made public statements regarding the contents of its grant application, and thus its statements were not misleading for failing to disclose information about any alleged omissions from the application.

Second, Plaintiffs' allegation is demonstrably false. As the Complaint admits, Microvast disclosed in its DOE grant application that it had operations in China. Microvast also disclosed the risks associated with these operations in China, including risks related to political tensions between the U.S. and China. To state the obvious, there can be no omission when the facts and risks at issue are actually disclosed.

Third, the Complaint is devoid of any facts raising a strong inference that any Individual Defendant acted with fraudulent intent in making the challenged statements about the DOE grant selection. The Complaint fails to explain how each Individual Defendant knew of or recklessly disregarded the risk that the DOE would ultimately terminate negotiations for the grant due to politically-motivated criticism of Microvast. Nor does the Complaint identify a credible motive for the alleged fraud, such as suspicious insider stock sales.

Plaintiffs' second theory of fraud, that Microvast falsely overstated the progress of construction on its new manufacturing facility in Clarksville, Tennessee, also fails. The Complaint acknowledges that Defendants' statements were consistent with the facts on the ground, and all but ignores Defendants' disclosures about the changes in Microvast's plans and the risks associated with the project. Plaintiffs also fail to allege any intent to deceive for the Clarksville facility statements, advancing unreliable allegations from anonymous former employees who are not alleged to have had any direct contact with any Individual Defendant.

Finally, with respect to the statements about both the DOE grant and the Clarksville facility, the vast majority are either protected by the PSLRA's safe harbor for forward-looking

statements or are immaterial as a matter of law (or both).  For these reasons and more, the Court should dismiss the Complaint.

## FACTUAL BACKGROUND

**Microvast.**  Defendant Microvast is an innovator for lithium-ion batteries based in Stafford, Texas.  Ex. 1 (FY 2021 10-K filed 3/29/2022) at ii.[1]  The Company designs, develops, and manufactures battery systems for electric vehicles ("EVs") and energy storage systems.  *Id.* Microvast is a global company with facilities and operations in the United States, Asia, and Europe. *Id.* at 1.  In 2021, the Company widened its U.S. operations when it began construction on a new manufacturing facility in Clarksville, Tennessee and expanded its research facilities in Orlando, Florida.  *Id.* at 3, 8.  In 2022, the Company also established a new energy storage division and testing center in Colorado.  Ex. 19 (May 25, 2023 Press Release) at 3.

At all relevant times, Microvast's operations in China were a matter of public record.  For example, in its FY 2021 Annual Report filed with the SEC on March 29, 2022, the Company disclosed that it had historically "conducted substantially all of" its business through its PRC subsidiary.  Ex. 1 at 20.  Microvast warned that its business in China could make the Company a target for politically-motivated criticism: "U.S. public companies that have substantially all of their operations in the PRC have been the subject of intense scrutiny, criticism and negative publicity…. In addition, the U.S. government has recently been highly critical of U.S. listed Chinese companies …. Future allegations or regulations might negatively impact us."  *Id.* at 31.

---

[1] "Ex." citations are to exhibits in the appendix of exhibits included with Defendants' motion. When deciding a motion to dismiss a securities fraud claim, the Court can consider documents incorporated by reference to the complaint and matters of which the Court may take judicial notice, such as the contents of documents filed with the Securities and Exchange Commission ("SEC"). *Lovelace v. Software Spectrum*, 78 F.3d 1015, 1017-18 (5th Cir. 1996).

**The Individual Defendants.**    Yang Wu is Microvast's founder, Chairman, and Chief Executive Officer.    ¶ 25.[2]   Craig Webster was Chief Financial Officer from April 2022 to April 2024.  ¶ 26.  Sascha Kelterborn served as Chief Revenue Officer from June 2021 to April 2024. ¶ 27. Shane Smith was Chief Operating Officer from July 2021 to August 2023. ¶ 28. Zach Ward was President of Microvast from August 2022 to February 2024.  ¶ 29.

**The Department of Energy Grant.**    In July 2022, Microvast, in collaboration with General Motors, applied for a Battery Materials Processing and Battery Manufacturing grant from the DOE to fund construction of a polyaramid separator plant in Hopkinsville, Kentucky.  ¶¶ 48, 60; Ex. 3 (DOE Grant Application) at 22.  The DOE grant program was described as providing $3.1 billion in funding opportunities for EV battery production in the United States.  Ex. 2, (DOE 5/4/2022 Press Release) at 4.  Microvast's application for the DOE grant explained that it would use the award funds to build a manufacturing plant in Kentucky to produce battery separators in the United States and create over 600 jobs. Ex. 3 at 22.  In addition to the $200 million from DOE, Microvast would have invested over $300 million of its own money into the project.  *Id.*  The application also disclosed Microvast's prior DOE grant awards, which included two current and five pending awards.  *Id.* at 35-37.

To qualify for the DOE grant as a "domestic entity," applicants were required to be incorporated in the United States with majority domestic ownership or control, and have a physical place of business in the United States. ¶ 50.  Microvast met these requirements, as it is incorporated in Delaware, has majority domestic ownership, and is headquartered in Texas.  ¶ 2; Ex. 3 at 25. Microvast also satisfied the disclosure requirements of the grant with respect to involvement of foreign entities.  ¶ 51.  That is, Microvast did not require a foreign entity waiver or a foreign work

---

[2] Paragraph citations are to the Complaint unless otherwise indicated.

waiver because the grant would fund construction by a domestic entity (Microvast) of a plant in Kentucky to supply United States lithium ion battery cell manufacturers.  Ex. 3 at 12, 27.[3]

The DOE selected Microvast for the DOE grant in October 2022.  ¶ 120.  The DOE's October 2022 announcement of grant recipients specified: "Selection for award negotiations is not a commitment by DOE to issue an award or provide funding.  Before funding is issued, DOE and the applicants will undergo a negotiation process, and DOE may cancel negotiations and rescind the selection for any reason during that time."  Ex. 6 (Oct. 2022 DOE Announcement) at 3. Microvast also disclosed the contingent nature of the selection, warning that the "specific terms and conditions of the grant funding remain under negotiation."  Ex. 8 (Nov. 10, 2022 10-Q) at 29. Microvast's public statements regarding the DOE grant never discussed or even referenced the July 2022 application.  *See* App. A at 1-4 (compiling the statements challenged in the Complaint).

In December 2022, two members of Congress began a politically-motivated campaign against Microvast, seeking to bully the DOE Secretary into terminating grant negotiations with Microvast.  ¶¶ 163, 165.  The campaign involved sending multiple letters to the DOE warning about the selection of Microvast for the grant.  Significantly, Plaintiffs acknowledge that "[n]one of these letters referenced representations Microvast had made in its Application."  ¶ 165.  In May 2023, the DOE caved to political pressure and terminated grant negotiations with Microvast. ¶ 166.  The Complaint does not allege any facts showing that the termination related in any way to the substance of Microvast's grant application.

**The Clarksville Facility.** Microvast began construction of a new battery manufacturing facility in Clarksville, Tennessee in February 2021.  Ex. 1 at 3.  Phase 1A of construction was to

---

[3] Microvast's activities abroad were irrelevant given that the grant funds would be used by a domestic entity (Microvast) to build a facility in the United States, but Microvast's application nevertheless referenced its operations in Europe, Asia, and China.  Ex. 3 at 17, 26-27.

convert an existing building for production of 2 gigawatt hour ("GWh") cell and module capacity per year. ¶ 83; Ex. 1 at 3. Phase 1B would increase production capacity to 4 GWh per year. *Id.*

In November 2022, Microvast described its "target" for the start of production of 2 GWh cell and module capacity in Clarksville under Phase 1A as "Q4 2023." Ex. 10 (Nov. 10, 2022 Earnings Call Presentation) at 11. Nearly all of Microvast's statements over the next year regarding the timeline for Phase 1A were similarly forward-looking. The statements described, for example, the Company's "expectation" regarding the start of test production and how the Phase 1A plans were "on track." *See* ¶¶ 139, 141, 143, 147, 149, 150, 157. Microvast also gave periodic high-level updates on the progress of construction and equipment delivery. *See* ¶¶ 143, 145, 152, 154. At the same time, the Company warned that "delays by [its] equipment vendors" and changes in "planned capital expenditures" could affect the Company's ability to meet projections relating to manufacturing capabilities. Ex. 1 at 40, 74-75.

When the timeline for production at the Clarksville facility changed, Microvast promptly updated investors. On a November 9, 2023 earnings call, for example, Microvast announced that it had "extended factory acceptance tests" as part of Phase 1A, which entailed a "slight delay in [start of production]." Ex. 25 (Nov. 9, 2023 Earnings Call Transcript) at 4. The corresponding presentation pushed the "[start of production] target" to "Q1 2024" from Q4 2023. Ex. 26 (Nov. 9, 2023 Earnings Call Presentation) at 7. The Company also announced that it was working to secure additional financing for the project. Ex. 25 at 7. On December 13, 2023, Microvast explained that it hoped to begin production at the facility in "early Q2" of 2024. Ex. 27 (Dec. 13, 2023 Fireside Chat Transcript) at 6-7. Later, in April 2024, Microvast announced a pause on Phase 1A to secure additional financing. ¶ 171. Contrary to Plaintiffs' assertions, Microvast did not state that construction of the Clarksville facility was "only half done." ¶ 173. Microvast actually

stated that it was halfway through its capital expenditures and needed additional capital to complete the equipment installation—which had already begun in Q4 2023. *Id.*

## LEGAL STANDARD

To state a claim under Section 10(b) of the Securities Exchange Act of 1934 and the SEC's Rule 10b–5, "a plaintiff must allege (1) a material misrepresentation or omission; (2) scienter (a 'wrongful state of mind'); (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) a 'causal connection between the material misrepresentation and the loss.'" *Mun. Emps.' Ret. Sys. of Mich. v. Pier 1 Imports, Inc.,* 935 F.3d 424, 429 (5th Cir. 2019) (*quoting Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005)).[4]

To survive a motion to dismiss under the PSLRA, a Section 10(b) claim must meet Federal Rule of Civil Procedure 9(b)'s pleading requirement as well as the PSLRA's heightened pleading standard. *Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 287 (5th Cir. 2006). The PSLRA requires Section 10(b) allegations to identify each statement that is alleged to be misleading and the reason why it is misleading. § 78u-4(b)(1). A complaint must also state *with particularity* the facts on which the allegation is based. *Id.* (emphasis added); *Abrams v. Baker Hughes, Inc.*, 292 F.3d 424, 430 (5th Cir. 2002). The Court must accept well-pleaded factual allegations and reasonable inferences therefrom as true, but is not required to accept as true "conclusory allegations or unwarranted deductions of fact." *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994). Plaintiffs must also plead particularized facts establishing a strong inference of scienter, and that inference must be "at least as compelling as any opposing

---

[4] In the Claims for Relief section, the Complaint briefly parrots the language in Rule 10b-5(a) and (c) of "acts, practices, and a course of business that operated as a fraud or deceit" and "devices, schemes and artifices to defraud." ¶ 236. Defendants reject any assertion that the FAC pleads scheme liability under Rule 10b-5(a) or (c) because Plaintiffs do not explain what the "scheme" would be in this case. Plaintiffs cannot plead a claim simply by reciting the language of a statute.

inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). A complaint that does not meet these heightened pleading standards must be dismissed. *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 350 (5th Cir. 2002).

## ARGUMENT

The Court must dismiss the Complaint for three independent reasons. First, Plaintiffs fail to adequately allege a materially false or misleading statement. Second, many of the challenged statements are not actionable as a matter of law because they are protected by the PSLRA's safe harbor for forward-looking statements. Third, the Complaint fails to allege particularized facts that raise an inference of scienter that is at least as cogent and compelling as the multiple nonfraudulent inferences in Defendants' favor.

## I. Plaintiffs Fail to Allege a Materially False or Misleading Statement.

The Court should dismiss the Complaint because it does not allege a material misstatement or omission as required to state a Section 10(b) claim. The DOE grant statements at issue cannot withstand a motion to dismiss because the purportedly concealed information was publicly disclosed and a pure omission is not actionable. The Clarksville facility statements cannot support a Section 10(b) claim because Plaintiffs fail to show that they were false or misleading when made and because a reasonable investor would not have been misled by the statements.

### A. The Court Should Dismiss the DOE Grant Statements.

The Complaint challenges statements made between October 19, 2022 and March 16, 2023 concerning Microvast's selection by DOE in the first round of its Battery Materials Processing and Battery Manufacturing initiative. *See* ¶¶ 120-121, 123, 126-127, 130-131, 133-135; *see also* App. A at 1-4 (listing the challenged statements). Plaintiffs allege that the statements were misleading because Microvast did not disclose that its grant application withheld information about its business operations in China, and this omission concealed "serious risks that the Department of

8

Energy would ultimately terminate grant negotiations." *See, e.g.*, ¶ 132. These alleged omissions, twice removed, cannot support a Section 10(b) claim.

### 1. Pure Omissions Are Not Actionable Under Rule 10b-5.

"Silence, absent a duty to disclose, is not misleading under Rule 10b-5." *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n.17 (1988). As the Supreme Court recently clarified in *Macquarie Infrastructure Corp. v. Moab Partners*: "Pure omissions are not actionable under Rule 10b-5." 601 U.S. 257, 260 (2024). In *Macquarie*, the plaintiff argued that the company's statements were false and misleading because they concealed from investors that it's largest product was subject to a "near-cataclysmic" ban due to new regulation. *Id.* at 261-62. In other words, Macquarie concealed a risk from investors. But Section 10(b) of the Exchange Act and Rule 10b-5 "do not create an affirmative duty to disclose any and all material information. Disclosure is required under these provisions only when necessary 'to make … statements made, in light of the circumstances under which they were made, not misleading.'" *Id.* at 264 (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011)). For this reason, the Court held that the failure to disclose a known risk as required under Item 303 of SEC Regulation S-K does not support a claim under Rule 10b-5 unless plaintiffs identify affirmative statements that are rendered misleading by the omission (*i.e.*, half-truths). *Id.* at 265.

Like the claim in *Macquarie,* Plaintiffs' claim is based on a pure omission. In fact, it is based on an omission twice removed: Plaintiffs claim that Microvast's public statements concealed from investors that its grant application omitted information about its business operations in China, which they claim created "serious risks that the Department of Energy would ultimately terminate grant negotiations." ¶ 128. But Microvast did not publicly disclose <u>any</u> information about the grant application in its public statements, which means there are no half-truths about the

application in the Company's public statements about the grant.  Therefore, under *Macquarie*,

Microvast has no liability for any alleged non-disclosure of information about the application.

Plaintiffs fail to identify any "half-truths"—*i.e.*, affirmative statements that are rendered

misleading because Microvast did not disclose that its DOE grant application omitted its China

operations.  None of the statements that Plaintiffs have plucked from the application are rendered

false by the alleged omission of Microvast's business operations in China, such as:

- Microvast is "a US majority owned battery solutions provider listed on the NASDAQ [] in 2021 and is headquartered in Stafford, Texas."  ¶ 63.

- Microvast has "manufacturing sites in USA, Europe, and Asia"  *Id.*

- Microvast has research centers in Orlando, Germany and Asia.  ¶ 65.

- Microvast has "patents and a decade of process know-how."  ¶ 77.

These statements do not claim, or imply, that Microvast did not have operations or facilities

in China.  To be actionable, an omission "must affirmatively create the impression of a state of

affairs that differs in a material way from one that actually exists."  *Ind. Elec. Workers' Pension*

*Tr. Fund IBEW v. Shaw Grp., Inc.*, 537 F.3d 527, 541 (5th Cir. 2008).  For the same reason, none

of Microvast's public statements disclosing the grant selection are false or misleading for failure

to disclose that Microvast's application allegedly withheld information about its business in

China—because none of the public statements discussed the application.  A truthful statement does

not become actionable because it omits information that, while unflattering, does not make the

challenged statement affirmatively misleading.  *See, e.g.*, *In re KBR, Inc. Sec. Litig.,* No. H-17-

1375, 2018 WL 4208681, at *5 (S.D. Tex. Aug. 31, 2018) (Ex. 31) (holding that net income and

revenue figures not misleading for failing to disclose alleged bribery).

Plaintiffs also fail to allege facts showing the challenged statements were misleading in

context.  *See In re Telefonaktiebolaget LM Ericsson Sec. Litig.*, 675 F. Supp. 3d 273, 286

(E.D.N.Y. 2023). Microvast tempered its statements concerning the DOE grant with specific warnings that the grant was contingent on future negotiations with the DOE (*e.g.*, the $200 million grant from the DOE remained subject to negotiation of specific terms), a warning that criticism of its connections with China could adversely impact its business in the United States, and cautions about protection of the Company's patents in China. *See* Ex. 8 at 29; Ex. 1 at 31, 58. The Court should therefore dismiss the Complaint as to the DOE grant statements for failure to allege an actionable omission.

### 2. All the Allegedly "Concealed" Information Was Disclosed.

Notwithstanding the fact that Plaintiffs' claims regarding the DOE grant are based on an impermissible pure omission theory of falsity, the Court can dismiss Plaintiffs' claims as to the DOE grant statements because the allegation that Microvast failed to disclose its operations in China is demonstrably false. The Complaint admits that Microvast's application disclosed "that it had operations in China." ¶ 62. This admission alone dooms Plaintiffs' omission claim. But Microvast's 10-K filed weeks before its grant application also disclosed its operations in China in exacting detail, including the risks related to Microvast's business in China:

– "We are a holding company, and we conduct all of our operations through our subsidiaries, and principally through our subsidiary in China." Ex. 1 at 22.

– "We conduct a significant amount of our operations in China through MPS, our majority-owned subsidiary in China." *Id.* at 31.

– "If we become subject to the recent scrutiny, criticism and negative publicity involving U.S.-listed Chinese companies, we may have to expend significant resources to investigate and resolve the matter which could harm our business operations, stock price and reputation, especially if such matter cannot be addressed and resolved favorably." *Id.* at 14.

– "[T]he U.S. government has recently been highly critical of U.S. listed Chinese companies…. Future allegations or regulations might negatively impact us." *Id.* at 31.

– "[T]he enforceability and scope of our patents in … the PRC … cannot be predicted with certainty…. Implementation and enforcement of PRC intellectual property-related laws has historically been deficient and ineffective." *Id.* at 58.

Plaintiffs suggest, *without any factual support*, that DOE was unaware of Microvast's business in China, speculating that DOE would not have conducted due diligence until the negotiation phase of the grant process.  ¶ 43.  But the public, which necessarily includes DOE, is deemed to have knowledge of information plainly disclosed in a company's SEC filings.  *See, e.g.*, *Hohenstein v. Behringer Harvard Reit I, Inc.*, No. 3:12-CV-3772-G, 2014 U.S. Dist. LEXIS 40759, at *28-29 (N.D. Tex. Mar. 27, 2014) (Ex. 29) (plaintiffs could not plead a material omission of information that was disclosed in the company's SEC filings).  Moreover, DOE had previously awarded no less than five grants to Microvast, including two grants that were current awards at the time of the July 2022 application.  *See* Ex. 3 at 9-11.  The claim that DOE was unaware of Microvast's operations in China thus strains credulity.

Further, neither Microvast nor its shareholders were harmed because the Company allegedly concealed from DOE its business operations in China.  As Senator Barrasso noted in his December 7, 2022 letter to the DOE Secretary, which Plaintiffs highlight in their Complaint (¶¶ 9, 163), "Microvast's close relationship with China is no secret."  Ex. 11 (Dec. 7, 2022 Barrasso Letter); ¶ 163.  Rather, Microvast was harmed because DOE cowed to the political pressure of U.S. legislators and terminated grant negotiations with the Company.  This is precisely the type of political risk that Microvast warned investors about in its SEC filings.  *See* Ex. 1 at 14 ("If we become subject to the recent scrutiny, criticism and negative publicity involving U.S.-listed Chinese companies, we may have to expend significant resources to investigate and resolve the matter which could harm our business operations, stock price and reputation….").

Likewise, the conditional nature of the grant selection was known to the public.  The Complaint intimates that Microvast falsely stated that it "had received" a $200 million grant from the DOE, when in fact it had only received an invitation to negotiate a grant.  ¶¶ 81, 120, 128.  But

investors understood that DOE's initial selection process was subject to future negotiations, as DOE posted on its website in October 2022: "Selection for award negotiations is not a commitment by DOE to issue an award or provide funding. Before funding is issued, DOE and the applicants will undergo a negotiation process, and DOE may cancel negotiations and rescind the selection for any reason during that time." Ex. 6 at 3.  Microvast also advised investors that the $200 million grant from the DOE remained subject to negotiation of specific terms.  Ex. 8 at 29.

The Court should therefore dismiss the Complaint as to the DOE grant statements because all the allegedly omitted information was disclosed.  *See In re Keyspan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 377 (E.D.N.Y. 2003) ("Even at the pleading stage, dismissal is appropriate where the complaint is premised on the nondisclosure of information that was actually disclosed.").

**B.  The Court Should Dismiss the Clarksville Facility Statements**

The Complaint challenges statements made regarding the Clarksville facility between March 2023 and December 2023 because they allegedly "overstated" the progress of completion. *See* ¶¶ 137-162; App. A at 4-11 (listing the challenged statements).  Plaintiffs have not come close to meeting their pleading burden—they fail to show that the statements were false when made and they ignore the broader context showing that the statements were not misleading to a reasonable investor.

**1.  Plaintiffs Do Not Allege Facts Showing that Statements About Construction and Equipment Were False When  Made.**

The Complaint is devoid of any facts showing that the statements about construction and equipment were false when made.  ¶¶ 137, 143, 145, 150, 152, 154, 156-157, 159; *see Heck v. Orion Grp. Holdings, Inc.*, 468 F. Supp. 3d 828, 848 (S.D. Tex. 2020) ("[A] plaintiff must allege facts capable of raising a plausible inference that earlier statements were false when made" and may not rely on "fraud by hindsight").  The common thread running through Plaintiffs' falsity

13

allegations is that the Clarksville facility was behind schedule. *See, e.g.*, ¶¶ 140, 144, 151. But Plaintiffs acknowledge that construction was underway at the facility and concede that equipment deliveries were scheduled at the time of the May 2023 statements. ¶ 144. By August, Plaintiffs also admit that some equipment—at least 10%—had arrived. ¶ 153. This, in turn, was consistent with both the August 8 statement that "the equipment's arriving now" (¶ 152), and the November 9 statement that "approximately 30% of the equipment" was onsite (¶ 154). In terms of construction, Defendants said in May 2023 that the Clarksville facility had "utilities," and Plaintiffs concede that there was electricity in the building at that time. ¶¶ 143-144. And in August and November 2023, when Microvast reported that the construction phase was "nearly done" and "nearly at completion," respectively, the Complaint admits that the critical infrastructure was complete because the final steps in construction—installation of cleanrooms—was well underway. ¶¶ 152-155. Plaintiffs therefore fail to plausibly allege that Defendants' statements were false when made because they were "reasonably consistent" with the facts available at the time. *Parker v. Hyperdynamics Corp.*, 126 F. Supp. 3d 830, 853 (S.D. Tex. 2015).

### 2. Defendants' Statements Would Not Mislead a Reasonable Investor.

The Court should also dismiss Defendants' statements regarding construction and equipment delivery because they would not mislead a reasonable investor when read in context with all the available information. This is true for three reasons.

First, in almost every instance, Defendants spoke about the Clarksville facility in generalized terms and without any reference to specific deadlines for construction and equipment delivery. The statements include representations like the equipment "was laying on the floor for [factory acceptance testing]" (¶ 137), the facility is a "mirror with China" (¶ 141), the equipment is "being put on boats" (¶ 143), "[w]e are ready right now" (¶ 150), the "construction phrase is nearly done" (¶ 152), the "equipment's arriving now" (¶ 152), "we are nearly at completion"

14

(¶ 154), "minor work remains," (¶ 154), "Construction—pretty much done" (¶ 156), and "the building, the infrastructure is done" (¶ 159). These phrases indicated that progress was underway—which is indisputably true—but cannot be understood as anything more than "high-level, general statements" and thus would not mislead a reasonable investor in the manner asserted by Plaintiffs. *In re Plains All Am. Pipeline, L.P. Sec. Litig.*, 245 F. Supp. 3d 870, 909 (S.D. Tex. 2017).

Second, Defendants updated investors as plans changed and disclosed the risks associated with bringing on production capacity in Clarksville. *See, e.g.*, Ex. 1 at 40, 74-75 (warning that "delays by [its] equipment vendors" and changes in "planned capital expenditures" could affect the Company's ability to meet projections). A reasonable investor would not be materially misled given these disclosures. *See, e.g.*, *Kapps v. Torch Offshore, Inc.*, 379 F.3d 207, 214 (5th Cir. 2004) (holding that statements were not materially misleading to a reasonable investor where the information allegedly omitted from the statements was disclosed); *In re Plains*, 245 F. Supp. 3d at 910 (statements would not mislead a reasonable investor given the "overall context" in which they appeared, which included the company's risk disclosures).

Third, Plaintiffs improperly mischaracterize a number of the challenged statements. The Court must consider the "content" and "context" of the statements to rule on falsity. *Id.* at 890 (citing *Matrixx*, 563 U.S. at 43). For example, Plaintiffs draw a false equivalency between capital expenditures and construction progress, alleging that Microvast stated in May 2023 that it was "halfway through completion" of the facility because the Company's May 25, 2023 press release stated that Microvast was "about half-way through the company's more than $300 million investment in the plant." ¶¶ 145-146, 174. But Plaintiffs do not allege any basis to conclude that capital expenditures correlate with construction progress, and Defendants' statements clearly

indicate that capital was spent on items other than construction of the building—such as equipment.  Put differently: Microvast's statement that it was halfway through capital expenditures is not reasonably read as a statement that construction was halfway complete.

In another example, Plaintiffs claim Defendant Webster was talking about Phase 1A when he  said "the sort of hard yards have been done."  ¶¶ 159, 162.  But Webster was responding to a question about Phase 1B, as indicated by the plain language of both the question and his response.  When read in their proper context, the statements are not misleading to a reasonable investor.

### C.  Corporate Puffery is Immaterial as a Matter of Law.

"Allegations that amount to little more than corporate 'cheerleading' are puffery ... and are not actionable … because no reasonable investor would consider such statements material and because investors and analysts are too sophisticated to rely on vague expressions of optimism rather than specific facts."  *Police & Fire Ret. Sys. of City of Detroit v. Plains All Am. Pipeline, L.P.*, 777 F. App'x 726, 730 (5th Cir. 2019) (Ex. 34) (internal quotation marks and citations omitted).  The following statements challenged in the Complaint are immaterial corporate puffery:

– "We are very proud as an American company to receive that honor and being recognized as one of the very important partners for developing battery technology further into US—and we are happy that General Motors will collaborate with us to create this special live separator."  ¶ 131.

– "The entire team is just racing to get there…."  ¶ 150.

– "If you just wind back to the start of the year, we've really achieved [our goals] for this year. … And then we've really moved along great strides on Clarksville."  ¶ 156.

– "[W]e're in the race to get Clarksville into production."  ¶ 157.

– "If you look at both Huzhou and Clarksville, the sort of hard yards have been done."  ¶ 159.

These statements do not provide any specific metrics, timelines, or other "concrete factual" representations that could qualify as material.  *See Lain v. Evans*, 123 F. Supp. 2d 344, 348 (N.D. Tex. 2000).  Microvast's statement that it was "proud" of the DOE grant selection is no more than

16

a positive description of developments in the regulatory process.  *See In re Aratana Therapeutics Inc. Sec. Litig.*, 315 F. Supp. 3d 737, 757 (S.D.N.Y. 2018).  Statements that Microvast was "racing" to production or making "great strides" are a "generalized positive characterization that is not actionable under the securities laws."  *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 870 (5th Cir. 2003) (statement that company was "making steady progress" was immaterial).  Similarly, statements that Microvast had "really achieved" its goals and that "the hard yards have been done" are equivalent to saying the Company was "well prepared," which is immaterial puffery.  *See Town of Davie Police Pension Plan v. Pier 1 Imps., Inc.*, 273 F. Supp. 3d 650, 677-78 (N.D. Tex. 2017).

## II.  Forward-Looking Statements are Protected by the PSLRA Safe Harbor.

The Court must dismiss the challenged  statements that are protected by the PSLRA safe harbor for forward-looking statements.  The safe harbor precludes liability in a private securities action for forward-looking statements in three instances.  First, there is no liability for a forward-looking statement that is "identified as a forward-looking statement" and "accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement." 15 U.S.C. § 78u-5(c)(1)(A) (i).  Second, the PSLRA safe harbor immunizes "immaterial" forward-looking statements.  *Id.* § 78u-5(c)(1)(A)(ii).  Third, the safe harbor protects any forward-looking statement that a plaintiff fails to show "was made with actual knowledge" that it was false or misleading.  *Id.* § 78u-5(c)(1)(B).  Under this rule, Defendants' forward-looking statements are not  actionable as a matter of law.

**The Protected Statements.**  The PSLRA's definition of a "forward-looking statement" includes "a statement of the plans and objectives of management for future operations." 15 U.S.C. § 78u-5(i)(1)(B).  Defendants' forward-looking statements included remarks like, "General Motors will collaborate with us" (¶ 131), "we're still on track … to build this factory" (¶ 141), and the "Company expects production to start in this year's fourth quarter" (¶ 147).  *See also* ¶¶ 123, 127,

17

130, 139, 143, 149, 150, 156-157, 160, 161.[5]  The use of language like "will," "expect" and "on track" shows that the statements are "anticipatory" and "make[s] clear that they are forward-looking."  *See Congregation of Ezra Sholom v. Blockbuster, Inc.*, 504 F. Supp. 2d 151, 163 (N.D. Tex. 2007); *see also Firefighters Pension & Relief Fund v. Bulmahn*, 147 F. Supp. 3d 493, 524-26 (E.D. La. 2015) (holding that similar projections about construction and start of production were forward-looking).  Defendants' forward-looking statements are thus protected by the safe harbor if they were (1) properly identified and accompanied by cautionary language, (2) immaterial, or (3) if Plaintiffs fail to show they were made with actual knowledge of their falsity.

**The Meaningful Cautionary Language.**  Defendants' statements were identified as forward-looking and directed readers and listeners to Microvast's SEC filings, which contained meaningful cautionary language in the form of detailed risk disclosures.  *See* App. B (forward-looking statements chart); App. C (risk disclosures chart).  Microvast specifically warned that the terms of the grant were under negotiation and criticism regarding any business in China— including from the U.S. government—could negatively impact the Company.  *See* App. C (risk disclosures) at 1-3.  Microvast also disclosed the risk of delays by equipment vendors, difficulties in managing the expansion of manufacturing capacity, and the potential need for additional capital expenditures.  *See id.* at 4-7.  These disclosures constitute meaningful cautionary language because they identified "the precise risks that [Microvast] later experienced" as alleged by Plaintiffs—the termination of grant negotiations, vendor delays, and the need for additional capital.  *Naglich v. Applied Optoelectronics*, 436 F. Supp. 3d 954, 973 (S.D. Tex. 2020); *see also Izadjoo v. Helix*

---

[5] The full text of Defendants' forward-looking statements is provided in the first two pages in Appendix B.  Appendix B also contains the disclaimers that identified the statements as forward-looking and directed readers and listeners to Microvast's SEC filings.

*Energy Sols. Grp., Inc.*, 237 F. Supp. 3d 492, 512 (S.D. Tex. 2017) (disclosures sufficient where they "specifically warned of precisely the type of delay the plaintiffs focus on").

**Lack of Materiality.**  The Court should dismiss the forward-looking statements quoted in paragraphs 131, 150, and 157 because Defendants' statement of optimism regarding the General Motors partnership and the vague references to "racing" and "being in the race" towards production are immaterial corporate puffery—as explained above in Section I.C.  *See Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*, 365 F.3d 353, 372 (5th Cir. 2004) (holding that forward-looking statements were immaterial puffery and therefore covered by the PSLRA safe harbor).

**Lack of Actual Knowledge.**  The Court must dismiss all the forward-looking statements challenged in the Complaint because Plaintiffs fail to show the statements were made with actual knowledge that they were false or misleading—the highest possible standard for scienter. *Firefighters Pension & Relief Fund v. Bulmahn*, 53 F. Supp. 3d 882, 910-11 (E.D. La. 2014).  As explained below in Section III, Plaintiffs do not allege conscious misbehavior or severe recklessness, let alone actual knowledge.  The scienter allegations for the DOE grant statements rely on group pleading without any particularized facts regarding the Individual Defendants' knowledge of the application's "omissions."  *See, e.g.*, *Mei Pang v. Levitt*, No. 1:22-cv-01191-DAE, 2023 U.S. Dist. LEXIS 227786, at *25 (W.D. Tex. Dec. 20, 2023) (Ex. 33) (explaining that group pleading cannot establish actual knowledge).

As for the Clarksville facility statements, the Complaint relies primarily on allegations from anonymous former employees for scienter.  But none had <u>any direct contact</u> with the Individual Defendants or otherwise claim that they witnessed a Defendant receive information about the "severity" of the alleged delays that would have contradicted Microvast's Phase 1A projections.  *See, e.g.*, *Carlton v. Cannon*, 184 F. Supp. 3d 428, 483-84 (S.D. Tex. 2016) (actual

knowledge was not plead where no confidential witness was alleged to have directly told an executive of severe technological problems that made his production projections misleading). Nor does the Complaint cite to any private admissions or corporate documents that would show actual knowledge. *See Hopson v. MetroPCS Commc'ns, Inc.*, No. 3:09-CV-2392-G, 2011 WL 1119727, at *18 (N.D. Tex. Mar. 25, 2011) (Ex. 30). The Court cannot find actual knowledge based on "conclusory allegations that Defendants 'knew' of the 'truth' because of access to unspecified reports and their alleged participation in unspecified meetings and conversations." *In re Alamosa Holdings, Inc. Sec. Litig.*, 382 F. Supp. 2d 832, 846-47 (N.D. Tex. 2005).

### III.  The Complaint Does Not Raise a Strong Inference of Scienter.

The Court should dismiss the Complaint for the independent reason that it lacks particularized facts supporting the necessary "strong inference" of scienter. The Complaint must "with respect to each act or omission … state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). The "required state of mind" is "an intent to deceive, manipulate, defraud or severe recklessness." *Local 731 Int'l Bhd. of Teamsters Excavators & Pavers Pension Tr. Fund v. Diodes, Inc.*, 810 F.3d 951, 957 (5th Cir. 2016) (citation omitted). To create a "strong inference," the scienter allegations "must ultimately be 'cogent and compelling,' not merely 'reasonable,' or 'permissible.'" *Shaw*, 537 F.3d at 533 (quoting *Tellabs*, 551 U.S. at 324). The Complaint must dismiss all the challenged statements because the Complaint does not allege facts raising a strong inference that any of the statements were made with scienter.

### A.  Plaintiffs Do Not Allege Any Motive for Fraud.

Notably absent from the Complaint is any motive for any Defendant to deceive investors. There are no allegations that the Individual Defendants sold their Microvast stock to profit from the purported "fraud." Defendant Wu, for example, allegedly owns more than 25% of Microvast's

20

shares (¶ 25), but he did not sell any shares before the stock price dropped and he suffered losses alongside the rest of Microvast's shareholders.  Nor is there any evidence that any Individual Defendant's executive compensation structure provided a motive.  In the absence of any apparent motive, "the strength of the circumstantial allegations" of scienter "must be correspondingly greater."  *Tuchman*, 14 F.3d at 1069  Plaintiffs thus "face a more stringent standard for establishing fraudulent intent."  *Id*.  As detailed below, Plaintiffs fail to meet this standard.

### B.  Plaintiffs Fail to Allege Scienter for the DOE Grant Statements.

The Court should dismiss the DOE grant statements because the Complaint fails to allege particularized facts showing that any of the statements was made with an intent to deceive.  *See Delaware Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp.*, 620 F. Supp. 3d 603, 620 (S.D. Tex. 2022).  The Complaint fails to satisfy its scienter burden for three reasons.

First, Plaintiffs' allegations regarding the DOE grant rely almost entirely on impermissible group pleading.  Plaintiffs cannot plead scienter based on what "'the defendants' did or knew" as a group without identifying "specific facts showing scienter" for each statement and each defendant.  *In re Plains*, 245 F. Supp. 3d at 923; *see also Southland*, 365 F.3d at 365 (rejecting group pleading as inconsistent with the PSLRA's particularity requirement).  In paragraph after paragraph, the Complaint makes conclusory statements about what the "Defendants" knew or did[6] without alleging any facts showing "when, where, and how any individual knew" that the DOE grant statements were fraudulent.[7]  *Southland*, 365 F.3d at 379.  For example, Defendant

---

[6] *See* ¶ 177 ("Defendants' statements…."); ¶ 178 ("Defendants made…."); ¶ 179 ("Defendants included …."); ¶ 180 ("Defendants unequivocally …."); ¶¶ 181, 187 ("Defendants knew …."); ¶ 182 ("Defendants understood …."); ¶ 190 ("The [lawmaker] letters drew Defendants' attention…."); ¶ 192 ("Defendants said ….").

[7] To the extent that Plaintiffs try to rely on a corporate scienter theory for any DOE grant statement, the Complaint would have to allege particularized facts showing that the "required state of mind"

Kelterborn made one of the challenged DOE grant statements on a November 10, 2022 earnings call.  ¶ 131.  The Complaint mentions Kelterborn only three times—twice to identify him as a defendant and once to identify him as a speaker during the earnings call.  *See* ¶¶ 27, 30, 131.  He is not alleged to have had any involvement in the DOE grant or any knowledge of the purported "omissions" from the application.  The Court must disregard allegations against Kelterborn and the other Individual Defendants that rely on impermissible group pleading.  *See Izadjoo*, 237 F. Supp. 3d at 514.

Second, the only scienter allegations related to the DOE grant statements that do identify a particular individual rather than "Defendants" as a group do not show scienter.  The Complaint alleges that two Microvast employees involved with the DOE grant application were quoted in a November 2, 2022 press release about the grant.  ¶¶ 183-185. But the Complaint does not show the state of mind of the individuals in question—non-defendant Dr. Wenjuan Mattis and Defendant Smith—with respect to the grant or the press release.  The mere fact that Mattis and Smith were both (a) involved in the grant, and (b) quoted in a press release about the grant is not fraudulent.

Third, even if the Court considers the allegations made with respect to "Defendants" as a group, the allegations still fail to raise a strong inference of scienter.  Specifically:

**Nature of the Statements (¶¶ 177-180).**  Plaintiffs try to allege scienter by characterizing the DOE grant statements as "deliberate," "unqualified," and "unequivocal," but they cannot "bootstrap the scienter requirement by claiming [the Court] can infer knowledge or recklessness based on the nature of the false or misleading statements themselves."  *City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*, 686 F. Supp. 2d 404, 423 (D. Del. 2009).  Plaintiffs must allege

---

existed "in the individual making (or being a cause of the making of) the misrepresentation." *Southland*, 365 F.3d at 366.  As explained, the Complaint fails to do so.

specific facts showing that Defendants "had reason to know of the falsity of their statements." *Id.* That particularized factual basis is wholly absent from the Complaint. Moreover, Plaintiffs cannot allege scienter based on the claim that Microvast misrepresented the DOE's "invitation to negotiate" as an "actual grant" because the conditional nature of the grant was public knowledge, which negates any inference of scienter. *See Owens v. Jastrow*, 789 F.3d 529, 540-41 (5th Cir. 2015) (explaining that the public disclosure of allegedly concealed information "negates the inference that defendants acted with scienter").

**Investor "Focus" (¶¶ 181-182).** The conclusory allegation that Defendants "knew investors were focused" on the DOE grant in October 2022 fails to establish scienter because it does not show <u>how</u> any Defendant knew or should have known that any DOE grant statement was false or misleading when made. *See Grove Holding Corp. v. First Wis. Nat'l Bank*, 803 F. Supp. 1486, 1501-02 (E.D. Wis. 1992) ("Assertions that Thornton knew the representations were false and … knew investors would rely on those representations are too conclusory to meet the requirements of Rule 9(b).").

**The DOE Grant Application (¶¶ 186-189).** Plaintiffs claim that the purported concealment of Microvast's business operations in China from the DOE grant application raises an inference of scienter. The Court should reject this allegation outright because the information was both disclosed in the application and known to the public. As noted by Senator Barrasso, Microvast's connections with China were "no secret." Ex. 11. There cannot be a "strong inference" of scienter when the withheld information is widely known. *See In re Pfizer, Inc. Sec. Litig.,* 538 F. Supp. 2d 621, 637 (S.D.N.Y. 2008) ("[C]ontradictory information must have been non-public in order to raise a strong inference of intent").

**Lawmaker Letters (¶¶ 190-192).**  The Complaint alleges that the Court can infer scienter from Defendants' statements that Microvast had "actually received a grant" after the lawmaker letters in December 2022.  This allegation fails for reasons already identified above—the conditional nature of the grant was public knowledge, Microvast disclosed its substantial operations in China and the risks thereof, and there are no particularized allegations to show that any Defendant intended to mislead investors by stating that Microvast had "received" a grant.

### C.  Plaintiffs Fail to Allege Scienter for the Clarksville Facility Statements.

The Court should also dismiss the Complaint as to the Clarksville facility statements for a lack of the requisite scienter.  To start, the Court must discount the allegations relying on hearsay from former employees.  Regarding the Individual Defendants, the Complaint does not allege particularized facts showing that they made any of the Clarksville facility statements with scienter.

**Anonymous Former Employees.**  As a rule, the Court must "discount allegations from confidential sources."  *Shaw*, 537 F.3d at 535.  And to give confidential witness allegations any weight at all, it must be likely that a "person in the position occupied by the source would possess the information alleged" and the Complaint must provide "sufficient specific facts to support their allegations." *ABC Arbitrage*, 291 F.3d at 352 (citation omitted).  The Complaint fails in both respects.  First, none of the former employees had senior management roles or reported directly to the Individual Defendants.  FE-1 and FE-3 were maintenance workers in the Clarksville Facility. ¶¶ 31, 33.  FE-2 was a "buyer" for the facility, but the Complaint does not allege that FE-2 actually worked in the facility or had any knowledge of the construction progress.  ¶ 32.  Second, the former employees were not involved in any meetings with senior management regarding the timeline for construction of the Clarksville facility or delivery of equipment by vendors.

Contrast these allegations with the facts of a recent Fifth Circuit decision involving Six Flags and construction of amusement parks in China, *Oklahoma Firefighters Pension and*

*Retirement System v. Six Flags Entertainment Corp.*, 58 F.4th 195 (5th Cir. 2023).  The former employee cited in that complaint was the "Director of International Construction and Project Management" and was "responsible for overseeing the construction of the China parks and reporting on their progress internally at Six Flags."  *Id.* at 205.  The court held that the former employee's allegations about construction of the amusement parks could be credited based on his "role in the Company and contemporaneous details of his knowledge."  *Id.* at 209.  Conversely, none of the former employees cited in the Complaint have credentials or knowledge remotely similar to the *Six Flags* former employee.

**Defendant Wu.**  The Complaint first alleges that there is scienter for Wu's March 16, 2023 statement that he "saw all the equipment laying on the floor" for factory acceptance testing in China because one vendor, Lyric, had not assembled equipment as of May 2023.  ¶¶ 193-195.  Wu's statement, however, did not claim that the equipment was "assembled" and "ready" for factory acceptance testing, nor did he identify the factory in question as belonging to Lyric (and the Complaint does not allege that Lyric was Microvast's <u>only</u> equipment vendor).  The Court should not infer scienter from Plaintiffs' mischaracterization of Wu's remark.

Next, Plaintiffs allege scienter based on the allegation that a former employee, FE-1, saw Wu at the Clarksville facility on "several occasions."  ¶ 199.  The Court cannot infer scienter from this allegation because the necessary detail is lacking—the Complaint does not specify how many times Wu visited the facility, when he visited, or the state of the facility during the visits.  *See Shaw*, 537 F.3d at 540-41 (refusing to credit confidential witness allegations where the complaint did not allege "when" particular events happened and the witness failed to "tie the defendants to ongoing knowledge about [a construction] project's status").

Finally, the Complaint asserts that Wu's statements during a December 13, 2023 analyst call that the Clarksville facility was "nearly complete" support an inference that unspecified "earlier statements" about the Clarksville facility (by unidentified "Defendants") were made with scienter. ¶¶ 212-215. This allegation is flawed in at least two ways. First, it is factually inaccurate, as Wu did not comment on whether the facility was complete during the analyst call—he said only that he anticipated production in Q2 2024 and that further employee training was necessary before production could begin. ¶ 161. Nor did Wu or any other Defendant comment on the completeness of capital expenditures, as Plaintiffs assert. *Compare* ¶¶ 156-161 *with* ¶¶ 212-213. Second, Plaintiffs do not allege which "earlier statements" were made with scienter based on the December 13, 2023 call—let alone <u>why</u> the call shows that any prior statements were made with an intent to deceive. *See Bulmahn*, 53 F. Supp. 3d at 912 (rejecting an allegation of the "defendants' collective knowledge" based on "after-the-fact statements" as "fraud-by-hindsight pleading").

**Defendant Smith.** The scienter allegations concerning Smith include an assertion regarding a trip he might have taken on another continent during an unspecified three-month period. Smith stated during a May 25, 2023 investor call that he had, at some point in the past, spent three months at Microvast's facility in Huzhou, China. ¶ 200. Plaintiffs speculate that there "would be no reason for Smith not to visit" equipment vendor Lyric in person at that time because Lyric was only a "two-hour flight" from Huzhou. *Id.* To be clear: Plaintiffs do not allege that Smith actually visited Lyric, they do not allege when he was in China or what he would have seen even if he had visited Lyric, and they do not connect those potential observations to his statements about the Clarksville facility. "This conclusory allegation is purely speculative, which is insufficient to plead a strong inference of scienter." *Coates v. Heartland Wireless Commc'ns, Inc*., 100 F. Supp. 2d 417, 432 (N.D. Tex. 2000).

26

Equally speculative are Plaintiffs' allegations about what one of Smith's subordinates, non-defendant William Muir, may have told Smith prior to the May 25, 2023 investor call. ¶¶ 203-205. Plaintiffs assert that FE-3 traveled to China in May 2023 and visited the Lyric factory, where he allegedly observed that many of Lyric's machines were not ready for factory acceptance testing, and then reported that information to Muir on May 22, 2023.  ¶¶ 203-204.  Critically, Plaintiffs do not allege that FE-3 or Muir actually conveyed FE-3's observations to Smith, or that there was even an opportunity for Muir to do so before the May 25, 2023 investor call.  Instead, Plaintiffs speculate (again) that "Muir had no reason to keep" the information from Smith, and thus Smith must have known about it at the time of the investor call.  ¶ 204.  This combination of speculation and hearsay-within-hearsay is not a particularized factual basis for scienter.  *See Wu Winfred Huang v. EZCORP, Inc.*, 259 F. Supp. 3d 563, 578 (W.D. Tex. 2017) (finding a "hearsay-within-hearsay account too unreliable to give rise to an inference of scienter"); *In re Reliant Sec. Litig.*, No. H-02-1810, 2004 U.S. Dist. LEXIS 27951, at *45-46 (S.D. Tex. Jan. 16, 2004) (Ex. 32) (holding that the allegation that an individual defendant "may have been contacted" by others within the defendant company did not support scienter because it was "speculative").

The other former employee allegations regarding Smith fare little better.  FE-3 claims that Smith was present at his office at the Clarksville facility "on average, about once per week." ¶ 197. The allegations from FE-1 are even less precise: "According to FE-1, Smith visited the Clarksville facility."  ¶ 198.  The bare allegation that Smith occasionally visited Clarksville does not show scienter for his May 25, 2023 statements without more detail on the time period of his visits and what he would have seen prior to May 25, 2023.  *See Dawes v. Imperial Sugar Co.*, 975 F. Supp. 2d 666, 703 (S.D. Tex. 2013) (allegation that an individual defendant had an office at a production facility did not show that the defendant made false projections with scienter).

27

Nor does FE-3's allegation that Smith "was on at least some" calls with Lyric establish scienter without any detail on when the calls occurred and what was discussed.  *See In re ArthroCare Corp. Sec. Litig.*, 726 F. Supp. 2d 696, 720 (W.D. Tex. 2010).  For example, Smith may have received information on those calls that was consistent with Microvast's expectations regarding the timelines for delivery of equipment.  It is not reasonable to draw an inference of intent to deceive from the mere fact that calls occurred without details of what was discussed.

Plaintiffs' final allegation with respect to Smith is that his "specific" statement  in May 2023 that the Clarksville facility had "utilities" shows scienter.  ¶ 210.[8]  Not so, because the Complaint admits that this was true—Plaintiffs acknowledge that the facility was at least "partially electrified" in  May 2023.  ¶ 144.

**Defendant Webster.**  Plaintiffs' scienter allegations against Webster rest entirely on his response to an analyst question during an April 1, 2024 earnings call.  ¶¶ 206-209.  In response to a question about how much capital Microvast would need to "get Clarksville back on track," Webster responded, "So as we indicated last time, we've got about halfway through Clarksville on CapEx. So to get it done, it's about $150 million …. And you're probably sick of hearing us talk about it on the financing."  Ex. 28 (Apr. 1, 2024 Earnings Call Transcript) at 6-7.  Plaintiffs describe Webster's remarks as "false exculpatory statements," claiming that Microvast did not previously disclose a need for additional capital or financing.  ¶¶ 207-209.  Again, not so.

In a November 9, 2023 earnings call, Webster said that Microvast was making progress on "financing which is to be secured by the Phase 1A expansion" and anticipated the facility would

---

[8] In ¶ 210, Plaintiffs misattribute to Smith a statement made by Defendant Ward during a November 9, 2023 earnings call.  *See* Ex. 25.  Regardless, the statements alleged in ¶ 210 do not raise an inference of scienter on behalf of either Defendant.  *See In re Plains*, 245 F. Supp. 3d at 925 (holding that the individual defendants' statements did not show scienter because they were not "frequently repeated, specific, and definitive").

"be in place <u>during Q4</u>." *See* Ex. 25 at 7 (emphasis added).  On the April 1, 2024 call,  Webster explained: "And you're probably sick of hearing us talk about it on the financing.  It wasn't done <u>at the end of the year</u>." Ex. 28 at 7 (emphasis added).  Put differently, Webster's statements on the April 1, 2024 call are consistent with his prior remarks on the same subject, and therefore do not raise an inference of scienter.[9]

**Irrelevant Going Concern Allegations.**  Plaintiffs' final Hail Mary scienter allegation  is that Microvast's disclosure in its April 1, 2024 10-K of a going concern issue raises an inference of intent.  ¶¶ 216-218.  Plaintiffs fail, however, to explain how this could possibly show scienter for any Individual Defendant with respect to any statements made between March 2023 and December 2023—particularly where the Company disclosed in November 2023 that it was seeking financing and adjusted its projections for the start of production at the facility.

### D.  The Opposing Inferences in Defendants' Favor Are More Cogent and Compelling.

The Court should also dismiss the Complaint because Plaintiffs do not plead facts that allow for a scienter  inference  that is "at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs,* 551 U.S. at 324.  The Court must review the allegations "holistically" and weigh the competing scienter inferences.  *Id.* at 326.  In doing so, it becomes even more clear that the Complaint fails to meet its scienter burden.

Regarding the DOE grant, Plaintiffs' theory of fraud borders on the absurd: Microvast "concealed" publicly available information about its operations in China from a July 2022 grant application with the clairvoyant knowledge that a political campaign against the Company beginning in December 2022 would scuttle the grant—all without any motive.  Far from "cogent

---

[9] The non-fraudulent inference in Webster's favor is strengthened by the fact that the analyst who posed the question regarding the Clarksville facility on April 1, 2024, Colin Rusch, did not participate in the December 2023 call.  But  Rusch was on the November 9, 2023 earnings call— where he asked a question about financing.  *See* Ex. 25 at 12-13.

and compelling," this theory is not even "reasonable or permissible." *Tellabs*, 551 U.S. at 324.

Instead, the "plausible nonculpable explanations" for the events alleged in the Complaint are overwhelming. *Id.*  Rather than "concealing" the information about Microvast's business in China, either in the DOE grant application or in public statements, the "much more compelling conclusion is that the defendants did not think that there was any need for public disclosure in view of the information already in the marketplace, the aggregate disclosure in [the Company's] filings, and the lack of any definitive regulatory requirement requiring the disclosure." *In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 587 (S.D.N.Y. 2013).

The nonculpable inferences in Defendants' favor with respect to the Clarksville facility are also more cogent and compelling than Plaintiffs' implausible scenarios.  As just one example, rather than inferring scienter based on the anecdotal observations of rank-and-file employees who did not have any direct contact with the Individual Defendants, the more plausible inference is that the Individual Defendants provided Phase 1A estimates based on information available to them at the time and the projections simply "didn't pan out." *San Antonio Fire & Police Pension Fund v. Syneos Health Inc.*, 75 F.4th 232, 244 (4th Cir. 2023).

## IV.  Plaintiffs Fail to Plead a Section 20(a) Claim Against the Individual Defendants.

Plaintiffs allege a violation of Section 20(a) of the Exchange Act against the Individual Defendants.  ¶¶ 243–248.  But "control person" liability is derivative—it requires an independent violation of the securities laws.  *In re Dell Inc. Sec. Litig.,* 591 F. Supp. 2d 877, 912 (W.D. Tex. 2008) (citations omitted).  Because this liability "cannot exist in the absence of a primary violation," the Court must dismiss the Section 20(a) claim because Plaintiffs have failed to adequately plead a violation of Section 10(b).  *Southland*, 365 F.3d at 383.

## CONCLUSION

For these reasons, Defendants respectfully request that the Court dismiss the Complaint.

Dated: June 27, 2024                    Respectfully submitted,

                                        /s/ *Paul R. Bessette*

                                        **KING & SPALDING LLP**
Paul R. Bessette
Texas Bar No. 02263050
Michael J. Biles
Texas Bar No. 24008578
500 West 2nd Street, Suite 1800
Austin, Texas 78701
Tel: (512) 457-2000
Fax: (512) 457-2100
Email: pbessette@kslaw.com
Email: mbiles@kslaw.com

*Attorneys for Defendants Microvast Holdings, Inc.,*
*Yang Wu, Craig Webster, Sascha Kelterborn, Shane*
*Smith, and Zach Ward*

31

## CERTIFICATE OF NOTICE TO OPPOSING PARTY

I hereby certify that, before filing this motion, counsel for the Defendants notified counsel for the Plaintiffs of the issues asserted in this motion and the parties could not agree that the pleading deficiency could be cured in any part by a permissible amendment.

*/s/ Michael J. Biles*
Michael J. Biles

## CERTIFICATE OF SERVICE

I hereby certify that on this day, June 27, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Michael J. Biles*
Michael J. Biles