**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |
|---|---|
| KIM SCHELLING, Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiff, | Case No. 4:23-cv-04565 |
| v. | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS THE AMENDED CLASS ACTION COMPLAINT** |
| MICROVAST HOLDINGS, INC., YANG WU, CRAIG WEBSTER, SASCHA KELTERBORN, SHANE SMITH, and ZACH WARD, | |
| Defendants. | |

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 1

   I.   The Complaint Does Not Allege a Materially False or Misleading Statement. .................... 1

       A.  The Court Should Dismiss the DOE Grant Statements. ............................................... 2

       B.  The Court Should Dismiss the Clarksville Facility Statements .................................... 5

       C.  The Court Should Dismiss Immaterial Corporate Puffery Statements. ......................... 7

  II.  The Court Must Dismiss Forward-Looking Statements Protected by the PSLRA Safe Harbor. ........................................................................................................................ 8

 III. Plaintiffs Fail to Allege Facts Raising a Strong Inference of Scienter. ............................... 9

       A.  The Complaint Does Not Allege Scienter for the DOE Grant Statements. ................. 10

       B.  The Complaint Does Not Allege Scienter for the Clarksville Facility Statements. ................................................................................................................ 12

       C.  The Court Must Reject New Scienter Theories in Plaintiffs' Opposition Brief. ......... 16

CONCLUSION .................................................................................................................. 20

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alaska Elec. Pension Fund v. Flotek Indus., Inc.*,
915 F.3d 975 (5th Cir. 2019) ................................................................................................14

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013)................................................................................................................5

*In re ArthroCare Corp. Sec. Litig.*,
726 F. Supp. 2d 696 (W.D. Tex. 2010)..................................................................................15

*Camelot Event Driven Fund v. Alta Mesa Resources, Inc.*
No. 4:19-CV-957, 2021 WL 1416025 (S.D. Tex. Apr. 14, 2021)...........................................13

*Carmon v. Carrington Mortg. Servs., LLC*,
No. 4:22-CV-03534, 2023 WL 9184038 (S.D. Tex. Dec. 5, 2023)..............................3, 13, 16

*City of Roseville Employees' Retirement System v. Horizon Lines, Inc.*,
686 F. Supp. 2d 404 (D. Del. 2009).......................................................................................11

*Del. Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas*,
620 F. Supp. 3d 603 (S.D. Tex. 2022) ...................................................................................12

*Detroit Gen. Ret. Sys. v. Medtronic, Inc.*,
621 F.3d 800 (8th Cir. 2010) ..................................................................................................3

*In re Digital Turbine, Inc. Sec. Litig.*,
No. 1:22-CV-550-DAE (W.D. Tex. July 19, 2023)................................................................17

*Hohenstein v. Behringer Harvard Reit I, Inc.*,
No. 3:12-CV-3772-G, 2014 U.S. Dist. LEXIS 40759 (N.D. Tex. Mar. 27,
2014) ........................................................................................................................................2

*Ind. Elec. Workers' Pension Tr. Fund Ibew v. Shaw Grp., Inc.*,
537 F.3d 527 (5th Cir. 2008) ............................................................................................12, 13

*Izadjoo v. Helix Energy Sols. Grp., Inc.*,
237 F. Supp. 3d 492 (S.D. Tex. 2017) ...................................................................................17

*In re KeySpan Corp. Sec. Litig.*,
383 F. Supp. 2d 358 (E.D.N.Y. 2003) .....................................................................................5

*Linenweber v. Sw. Airlines Co.*,
693 F. Supp. 3d 661 (N.D. Tex. 2023) .....................................................................................5

*Loc. 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Diodes, Inc.*,
  810 F.3d 951 (5th Cir. 2016) ...................................................................................19

*Lormand v. US Unwired, Inc.*,
  565 F.3d 228 (5th Cir. 2009) ....................................................................................8

*Macquarie Infrastructure Corp. v. Moab Partners*,
  601 U.S. 257 (2024)...................................................................................................3

*Melder v. Morris*,
  27 F.3d 1097 (5th Cir. 1994) .................................................................................5, 9

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
  272 F. Supp. 2d 243 (S.D.N.Y. 2003).......................................................................2

*Okla. Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*,
  58 F.4th 195 (5th Cir. 2023) .............................................................................7, 8, 13

*Owens v. Jastrow*,
  789 F.3d 529 (5th Cir. 2015) ...............................................................................11, 12

*In re Pfizer, Inc. Sec. Litig.*,
  538 F. Supp. 2d 621 (S.D.N.Y. 2008)......................................................................11

*In re Plains All Am. Pipeline, L.P.*,
  245 F. Supp. 3d 870 (S.D. Tex. 2017) .......................................................................9

*Plotkin v. IP Axess Inc.*,
  407 F.3d 690 (5th Cir. 2005) ...................................................................................18

*Roberti v. OSI Systems, Inc.*
  No. CV 13-9174-MWF VBKX, 2015 WL 1985562 (C.D. Cal. Feb. 27, 2015)......................19

*Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*,
  365 F.3d 353 (5th Cir. 2004) ...................................................................................12

*Studen v. Funko, Inc.*,
  No. C23-0824JLR, 2024 WL 2209686 (W.D. Wash. May 16, 2024) .......................9

*Talarico v. Johnson*,
  No. 4:21-CV-3689, 2023 WL 2618255 (S.D. Tex. Feb. 7, 2023) .............................8

*In re Venator Materials PLC Securities Litigation*
  547 F. Supp. 3d 624 (S.D. Tex. 2021) .....................................................................20

*Wieland v. Stone Energy Corp.*,
  No. CIV.A. 05-2088, 2007 WL 2903178 (W.D. La. Aug. 17, 2007)........................5

*Yoshikawa v. Exxon Mobil Corp.*,
  Civ. A. No. 3:21-CV-00194-N, 2023 U.S. Dist. LEXIS 148935 (N.D. Tex.
  Aug. 24, 2023) ...........................................................................................................12

*Yoshikawa v. Exxon Mobil Corp.*,
  No. 3:21-CV-00194-N, 2022 WL 4677621 (N.D. Tex. Sept. 29, 2022) .................................18

*Zak v. Chelsea Therapeutics Int'l, Ltd.*,
  780 F.3d 597 (4th Cir. 2015) ......................................................................................5

**Statutes**

Private Securities Litigation Reform Act...........................................................1, 7, 8, 19

**Other Authorities**

Rule 9(b) ..................................................................................................................1, 19

**INTRODUCTION**

Plaintiffs' Opposition (Dkt. 39) fails to salvage the pleading deficiencies in their Complaint.  Plaintiffs assert two distinct theories of securities fraud, neither of which satisfy the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"). First, Plaintiffs claim that Defendants misrepresented Microvast's selection for a Department of Energy ("DOE") grant because the grant was contingent on additional negotiations and the Company's grant application allegedly failed to disclose its operations in China.  Second, Plaintiffs allege that Defendants misstated the construction progress of Microvast's manufacturing facility in Clarksville, Tennessee.  Both of these "fraud" theories fail as a matter of law because they are premised on the non-disclosure of information that was disclosed, rely on mischaracterizations of Defendants' statements, and challenge statements that are inactionable because they are immaterial or protected by the PSLRA's safe harbor for forward-looking statements.

Plaintiffs' claims also fail for the independent reason that they do not plead the particularized facts necessary to raise a strong inference of scienter—an intent to deceive—on the part of each Defendant.  Instead, Plaintiffs merely ask the Court to indulge unwarranted deductions and speculation to find that Microvast's executives carried out a multi-year "fraud" without any alleged motive and without any facts showing that the Individual Defendants had any intent to make false or misleading statements.

For these reasons, and others more fully stated below and in Defendants' opening brief (Dkt. 37), the Court should dismiss the Complaint (Dkt. 30).

**ARGUMENT**

**I.  The Complaint Does Not Allege a Materially False or Misleading Statement.**

The Court should dismiss the  Complaint because it fails  to allege a false or misleading statement sufficient to meet the heightened pleading standards of the PSLRA and Rule 9(b).

1

### A.  The Court Should Dismiss the DOE Grant Statements.

Plaintiffs' two theories of falsity regarding the DOE grant statements do not support a claim for securities fraud.

Plaintiffs' first theory, that Defendants misled investors by saying that Microvast had been "selected" for a DOE grant, is defeated by the contemporaneous disclosure of the very information that Plaintiffs claim was "concealed" from investors.  Dkt. 39 at 6-9.  When the DOE announced the selection of several companies, including Microvast, to negotiate an award, the announcement stated, "Selection for award negotiations is not a commitment by DOE to issue an award or provide funding.  Before funding is issued, DOE and the applicants will undergo a negotiation process, and DOE may cancel negotiations and rescind the selection for any reason during that time."  Dkt. 38-6 at PDF pg. 3.  Microvast cannot be held liable for failing to disclose information that is "already public."  *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 272 F. Supp. 2d 243, 249-50 (S.D.N.Y. 2003) (collecting cases).

Nor can Microvast be held liable for the alleged "concealment" of information that was disclosed in its SEC filings.  *See Hohenstein v. Behringer Harvard Reit I, Inc.*, No. 3:12-CV-3772-G, 2014 U.S. Dist. LEXIS 40759, at *28-29 (N.D. Tex. Mar. 27, 2014) (Dkt. 38-29) (holding that disclosure of information in SEC filings defeated an omission claim).  In a 10-Q filed November 10, 2022 and a 10-K filed March 29, 2023, Microvast said that the "specific terms and conditions of the grant funding remain under negotiation." Dkt. 38-8 at PDF pg. 3; Dkt. 38-14 at PDF pg. 28.

Rather than engage with any of the authority Defendants cite holding that the Court should dismiss a complaint premised on the "omission" of information that was actually disclosed, Plaintiffs merely speculate that investors might have believed that "DOE had 'approved' Microvast's application."  Dkt. 39 at 9.   None of Plaintiffs' authority supports the claim that a reasonable investor might believe that the grant was final when both Microvast and the DOE said

that the grant was subject to negotiation.  In *Carlton v. Cannon*, for example, the court held that statements about operations at a company's plant were misleading because, when executives disclosed issues at the plant, they also repeatedly downplayed the problems and said that they were "start-up glitches rather than fundamental, structural defects."  184 F. Supp. 3d 428, 470-73 (S.D. Tex. 2016).  That case and its reasoning do not apply here at all as there were no similar representations from Defendants.  Plaintiffs' claim that reasonable investors would ignore or not be able to understand the contemporaneous disclosures that the grant was subject to negotiation is simply not plausible and is not supported by any cited authority.[1]

For similar reasons, the Court must reject the argument that Microvast concealed its China operations from the DOE and thus concealed from investors the purported "risk" that DOE would cancel the award.  To start, the Court can reject the argument because it is a pure omission theory of falsity that is no longer actionable under the Supreme Court's recent decision in *Macquarie Infrastructure Corp. v. Moab Partners*, 601 U.S. 257, 260 (2024).  The Opposition barely engages with this point, stating that the Complaint does not allege pure omissions because "Defendants told investors Microvast had received a grant."  Dkt. 39 at 9.  Plaintiffs miss the point entirely. Microvast did not disclose any information to the public about its grant application, meaning that under *Macquarie*, Defendants cannot be liable for "concealing" information about the application from its public statements that did not discuss or even reference the application.  *Id.*  For this reason alone, the Court should hold that Plaintiffs have failed to allege an actionable misstatement.

---

[1] The Opposition also briefly argues that the changes in Microvast's stock price "show that Defendants' false statements misled investors."  Dkt. 39 at 7.  But the case Plaintiffs cite merely says that a "change in stock price upon disclosure of withheld information is strong evidence that the information was material."  *Detroit Gen. Ret. Sys. v. Medtronic, Inc.*, 621 F.3d 800, 807 (8th Cir. 2010).  While that may be true, the question here is not materiality, but rather whether information was disclosed.   The case is inapposite and the changes in stock price are irrelevant.

The Court can also reject Plaintiffs' arguments because the Complaint does not plausibly allege in the first instance that Microvast concealed its China operations from the DOE.   Plaintiffs admit that Microvast's application disclosed "that it had operations in China."   ¶ 62.   The Opposition ignores this admission and instead repeats the Sinophobic allegations of the Complaint, claiming that Microvast lied on its application and is really "a Chinese company" beholden to the Chinese Communist Party.   Dkt. 39 at 7-8.   These allegations do not address, let alone rebut, Defendants' explanation of why the allegedly false statements in the application are not misleading by omission.   *See* Dkt. 37 at 10.   And Plaintiffs have not alleged any facts to show that any "false statements" in the application caused the DOE to cancel the grant negotiations.

The Opposition also fails to explain why the actual disclosure of the relevant facts and risks of Microvast's business in China does not preclude a fraud claim based on the alleged "concealment" of that information.   Defendants' motion to dismiss excerpted portions of Microvast's SEC filings that disclosed both (a) Microvast's business in China, and (b) the risks related to that business.   *See* Dkt. 37 at 17.   Defendants also cited to the grant application showing that Microvast has five current and pending awards from DOE.   Dkt. 38-3 at PDF pgs. 9-10.   In response, Plaintiffs only rehash the allegations of the Complaint, assert that investors and the DOE would have ignored those disclosures, and claim that the prior grant awards are irrelevant.   *See* Dkt. 39 at 8-9.   The Court is not required to accept these self-serving assertions and speculation as well-pleaded facts.

Finally, Plaintiffs argue that Defendants are raising a fact-specific "truth on the market" defense that is inappropriate at the motion-to-dismiss phase.   Dkt. 39 at 9-10.   Plaintiffs are wrong. Defendants rely on the well-established and common-sense rule that "dismissal is appropriate where the complaint is premised on the nondisclosure of information that was actually disclosed."

4

*In re KeySpan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 377 (E.D.N.Y. 2003) (collecting cases). None of Plaintiffs' cases so much as even suggest that Defendants' arguments about actual disclosure are equivalent to a truth on the market defense.[2]

### B.  The Court Should Dismiss the Clarksville Facility Statements

The Court should dismiss the challenged statements regarding the Clarksville facility because they are not misleading when the full content and context of the statements are considered. *See Melder v. Morris*, 27 F.3d 1097, 1100-01 (5th Cir. 1994) (rejecting "mischaracterizations" of the defendant's statements and holding that no "reasonable reader" could interpret the statements in the manner alleged); *Linenweber v. Sw. Airlines Co.*, 693 F. Supp. 3d 661, 680-81 (N.D. Tex. 2023) (rejecting the argument that a statement was misleading after reading the "full statement" in "context").  Plaintiffs ignore this bedrock principle of law.

For example, Plaintiffs advance unreasonable and inaccurate interpretations of statements made by Defendants Wu and Smith.  On March 16, 2023, Wu stated on an earnings call: "equipment is fabricating in China … I went there last week.  I saw all the equipment laying on the floor for FAT, factory testing…."  Dkt. 38-15 at PDF pg. 15.  Plaintiffs allege that this statement was false because it was "impossible" for Wu to have seen "all" the equipment on the floor for testing because one of Microvast's equipment vendors, Lyric, did not have "all" its equipment assembled for testing in March 2023.  Dkt. 39 at 5-6.  But Wu did not refer to Lyric, and he did not say that "all" the equipment was assembled.  Plaintiffs just made up those allegations, and then argue it is "reasonable" to infer that Wu was referring to "all" the equipment

---

[2] *Amgen* and *Wieland* are class certification cases where class membership turned on whether investors purchased stock before or after purported corrective disclosures. *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 480–81 (2013); *Wieland v. Stone Energy Corp.*, No. CIV.A. 05-2088, 2007 WL 2903178, at *11 (W.D. La. Aug. 17, 2007) (Dkt. 40-4 at PDF pg. 142).  The *Chelsea Therapeutics* opinion does not even address a "truth on the market" defense. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 601, 610-11 (4th Cir. 2015).

for Clarksville—meaning every piece of equipment for a 577,000 square foot facility—assembled on a single factory floor. ¶ 83. That is not a reasonable interpretation of Wu's statement.

Plaintiffs also ignore the content and context of Defendant Smith's statements during a May 25, 2023 Investor Day call. Smith stated, with respect to equipment coming from China: "It's now being put on boats through June, July, August, September. All the equipment is coming into Clarksville. You'll see some pictures. Right now, it's just a building with the utilities, with the equipment on the way." Dkt. 38-18 at PDF pg. 18. Later in the call, Smith referred to a team traveling to China to see a production line that would be replicated in Clarksville and said, "They get to see a production line already operating, already program set up, and then they go back home and say, okay, as soon as it lands, we're going to do that." *Id.* at PDF pg. 23.

Plaintiffs contend that these statements were misleading because Smith was saying that "the building was already complete" and "all that remained was installing the equipment." Dkt. 39 at 13. That is a blatant mischaracterization of Smith's statements. What he said was (1) as of May 2023, the facility was "just a building with the utilities," (2) suppliers would begin to send equipment from China over the next four months, and (3) once the equipment landed in the United States months later—because Plaintiffs allege that it takes a minimum of eight weeks to ship the equipment—a team in Clarksville would have the knowledge necessary to install it. When read in full and in context, Plaintiffs do not plausibly allege that the statements were false or misleading.

As for the other statements about the Clarksville facility, they were general statements about the progress of construction and equipment installation that were consistent with the facts as alleged by Plaintiffs. *See* Dkt. 37 at 14-15. In May 2023, when Defendant Smith said that Microvast had scheduled equipment deliveries to occur in the following months, that was true, as almost a third of the equipment for Clarksville was delivered by November 2023. ¶ 153.

6

Defendants' statements in August and November 2023, that construction was "nearly done," were also true as Plaintiffs admit that the final aspects of construction were underway and that equipment installation began in Q4 2023. *See* ¶¶ 118, 152-155. When plans changed, Microvast updated investors. *See* Dkt. 37 at 6. It also updated investors about the risks of delays. *See* Dkt. 38-1 at PDF pgs. 22-23, 38 and 40-41. In these circumstances, Plaintiffs cannot allege that Microvast's general progress statements were false or misleading.

### C. The Court Should Dismiss Immaterial Corporate Puffery Statements.

Defendants' motion to dismiss identified five challenged statements that are immaterial corporate puffery because they are vague expressions of optimism regarding the DOE grant and the Clarksville facility rather than specific representations of fact. *See* Dkt. 37 at 22. In a footnote, the Opposition cites a string of cases and then claims that the challenged statements are "too specific" and "important" to qualify as puffery and also "contradict current information." Dkt. 39 at 23 n.13. But the Opposition does not explain how these statements are specific or important, or how they contradict any "current information." And while the Opposition tries to analogize to *Six Flags*, that comparison fails. In *Six Flags*, the court held that statements describing construction "as 'continuing' and 'progressing' in the context of confirming the park timelines" for construction were not puffery. *Okla. Firefighters Pension & Ret. Sys. v. Six Flags Ent. Corp.*, 58 F.4th 195, 220 (5th Cir. 2023). But here, Defendants merely said they were "proud as an American company" to partner with the DOE and that they had "really moved along great strides at Clarksville" since the beginning of 2023. ¶¶ 131, 156. Those are not statements "confirming" a timeline, they are descriptions of pride in the Company's achievements and are inactionable puffery.[3]

---

[3] The Court should also dismiss the immaterial puffery statements challenged in paragraphs 131, 150, and 157 because they are forward-looking and protected by the PSLRA safe harbor. Contrary to the Opposition's assertion that materiality is a fact question (Dkt. 39 at 19 n.16), courts routinely

## II. The Court Must Dismiss Forward-Looking Statements Protected by the PSLRA Safe Harbor.

Defendants' motion to dismiss identified fifteen challenged statements about the DOE grant and the Clarksville facility that are forward-looking and protected by the PSLRA safe harbor. Dkt. 37-2 at 1-2. Six of the statements described future receipt of the DOE grant and collaboration with General Motors. *Id.* at 1 (citing ¶¶ 123, 126, 127, 130, 131). They were identified as forward-looking, accompanied by cautionary language, and were not made with actual knowledge of falsity. *Id.* at 3-5 (forward-looking statement disclaimers); Dkt. 37-3 at 1 (risk disclosures); Dkt. 37 at 25. The Opposition does not contest that these statements are protected by the safe harbor. *See* Dkt. 39 at 6-9. Accordingly, the Court should dismiss these statements.

The Court should also dismiss the nine forward-looking statements regarding the Clarksville facility. Dkt. 37-2 at 1-2 (citing ¶¶ 141, 143, 147, 149, 150, 156, 157, 160, 161). The Opposition claims that the statements are not protected by the safe harbor because they were "tied" to or "intertwined" with the present status of construction in Clarksville. Dkt. 37 at 8-9, 12-13. Plaintiffs essentially argue that because Defendants discussed the present progress of construction at some point between March 2023 and December 2023, their forward-looking statements do not qualify for the safe harbor. But *Six Flags*, the primary authority cited by Plaintiffs, refutes that argument. The "future deadlines" statements in *Six Flags* were not protected by the safe harbor because they were "*accompanied by* reassurances about present progress towards those deadlines." 58 F.4th at 217. Here, Plaintiffs have not shown how each statement was "tied" by the speaker to the present status of construction. *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 245 (5th Cir. 2009) ("Each statement that benefits from the safe harbor must be addressed individually.").

---

dismiss immaterial statements. *See, e.g., Talarico v. Johnson*, No. 4:21-CV-3689, 2023 WL 2618255, at *12 (S.D. Tex. Feb. 7, 2023).

Plaintiffs fail to show that the forward-looking statements regarding the Clarksville facility were not accompanied by sufficient cautionary language or were made with actual knowledge of falsity. The argument that disclosures of potential delay were ineffective because the risks had already occurred ignores the updates that Defendants provided for the start of test production in Clarksville, which distinguishes this case from those cited by the Opposition. *See, e.g.*, *Studen v. Funko, Inc.*, No. C23-0824JLR, 2024 WL 2209686, at *11 (W.D. Wash. May 16, 2024) (rejecting allegations that a risk disclosure was ineffective because defendants knew a delay in a target date was likely because defendants updated the target date). The Opposition also fails to specifically address the actual knowledge of falsity standard required for the Clarksville forward-looking statements, no doubt because Defendants have shown that the Complaint fails to allege the even lower standard of scienter for those statements. The statements are thus protected by the safe harbor. *See* Dkt. 37 at 19-20.

### III.   Plaintiffs Fail to Allege Facts Raising a Strong Inference of Scienter.

In a securities fraud action, specificity is essential to scienter: "To adequately plead scienter, the plaintiffs must make individualized, specific allegations about each speaker's state of mind for each allegedly false or misleading statement." *In re Plains All Am. Pipeline, L.P.*, 245 F. Supp. 3d 870, 921 (S.D. Tex. 2017). "The individualized and specific allegations must generate a cogent and compelling inference that the defendant intended to deceive or was severely reckless." *Id.* And where, as here, there is no motive to defraud alleged, an even "more stringent standard" applies and the Complaint must provide "specific facts upon which an inference of *conscious behavior* may be based." *Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir. 1994) (emphasis added).

Perhaps recognizing that the Complaint has failed to allege specific facts showing scienter for each challenged statement, Plaintiffs abandon most of their scienter allegations and try to

9

introduce new theories in the Opposition.  The Court must reject these new theories and dismiss the Complaint for its failure to allege specific facts showing conscious behavior by Defendants.

### A. The Complaint Does Not Allege Scienter for the DOE Grant Statements.

Defendants have identified three reasons why the Complaint failed to allege the requisite intent to deceive for the DOE grant statements.  Plaintiffs all but concede these three points.

First, Plaintiffs concede that the scienter allegations in the Complaint rely almost entirely on group pleading.  *See* Dkt. 37 at 21-22 (identifying the paragraphs in the Complaint that used impermissible group pleading with respect to the DOE grant statements).  Their only retort is that "Defendants' argument about group pleading … fails because there is sufficient indicia of scienter for each Individual Defendant."  Dkt. 39 at 30 n.21.  Yet Plaintiffs fail to plead any particularized facts showing any indicia of scienter for each Individual Defendant for their DOE grant statements.

Second, the Opposition fails to rescue Plaintiffs' scienter theories that rely on group pleading—the nature of the statements, investor focus, the DOE grant application, and the lawmaker letters.  *See* Dkt. 37 at 22-24 (addressing each theory in turn).  The Opposition simply states, without citation to the Complaint, that "Defendants knew facts showing their statements were false" and "Plaintiffs allege specific facts showing that Defendants knew their statements were false or were severely reckless."  Dkt. 39 at 20.  What facts?  The Opposition certainly does not cite any.

The importance of this point cannot be overstated.  The failure to allege specific facts showing that any Individual Defendant made a DOE grant statement with intent to deceive is the reason why Plaintiffs' scienter theories fail to support a securities fraud claim.  For example, the Complaint describes the DOE grant statements as "deliberate," "unqualified," and "unequivocal," but does not allege how the Individual Defendant who made the statement or caused it to be made knew the statement was false or misleading when made.  Without such facts, the Court cannot

10

"infer knowledge or recklessness based on the nature of the false or misleading statements themselves," as explained in *City of Roseville Employees' Retirement System v. Horizon Lines, Inc.*, 686 F. Supp. 2d 404, 423 (D. Del. 2009). The Opposition attempts to distinguish this holding, but tacitly admits that knowledge of falsity is necessary to raise an inference of scienter based on the nature of the challenged statements.

Plaintiffs also fail to offer any compelling response to authority holding that public disclosure of information negates any inference of scienter from alleged concealment or misrepresentation. *See Owens v. Jastrow*, 789 F.3d 529, 540-41 (5th Cir. 2015); *In re Pfizer, Inc. Sec. Litig.,* 538 F. Supp. 2d 621, 637 (S.D.N.Y. 2008). The Opposition claims that *Owens* and *Pfizer* are inapposite because the contradictory information was public, while Microvast's DOE application and communications with the DOE were not. Dkt. 39 at 21 n.19. But that argument fails because it is contrary to what is actually alleged in the Complaint.

The Complaint alleges that concealment of information from the DOE application by Defendants raises an inference of scienter: "Microvast's statements in the Application were calibrated to conceal the fact that substantially all its operations were in China." ¶ 186. The *Pfizer* decision, however, holds that when information is public, the alleged concealment of that information does not raise a strong inference of scienter. *See Pfizer,* 538 F. Supp. 2d at 637. Plaintiffs do not meaningfully contest this point. *See* Dkt. 39 at 21 n.19.

The Opposition also claims for the first time that Defendants were severely reckless because "reasonable investors would assume" that Microvast's statement that it had been selected to receive a grant "was based on representations from the DOE." Dkt. 39 at 20-21. But again, Plaintiffs do not dispute the *Owens* holding that public disclosure of "red flag" information negates an inference of severe recklessness. The logic of *Owens* applies here because Microvast disclosed

11

the conditional nature of the grant selection.   *See* Dkt. 38-8 at PDF pg. 3; Dkt. 38-14 at PDF pg. 28.  Those disclosures "neutralize any scienter inference."  *Owens*, 789 F.3d at 541.

Third, the Opposition does not cite any specific factual support for the Complaint's theory that the "scienter" of non-defendant Wenjuan Mattis and Defendant Smith can be imputed to Microvast.  *See* Dkt. 39 at 23 (averring only that "the scienter of both Smith and non-defendant Wenjuan Mattis is clear").  The lack of factual support is fatal to this imputation theory.  *See Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*, 365 F.3d 353, 366 (5th Cir. 2004) (explaining that an individual must "have the requisite level of scienter" to impute scienter to a corporation).

**B.  The Complaint Does Not Allege Scienter for the Clarksville Facility Statements.**

As with the DOE grant statements, the Opposition cannot overcome the Complaint's failure to "make specific factual allegations about each responsible individual's state of mind" when each challenged statement about the Clarksville facility was made.  *Del. Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas*, 620 F. Supp. 3d 603, 620 (S.D. Tex. 2022).  Without such particularized facts, Plaintiffs resort to speculation, mischaracterizations of the statements, and citation to unhelpful authority.

First, the Opposition tries to bolster the allegations from three anonymous former employees.  To establish a strong inference of scienter through former employees, Plaintiffs must identify facts that allow the Court to credit the allegations "for purposes of" the Individual Defendant's scienter for the challenged statements.  *Yoshikawa v. Exxon Mobil Corp.*, Civ. A. No. 3:21-CV-00194-N, 2023 U.S. Dist. LEXIS 148935, at *18-19 (N.D. Tex. Aug. 24, 2023). The former employee allegations must provide a link to the state of mind of a defendant and show possession of knowledge contrary to the defendant's public statements.  *See Ind. Elec. Workers' Pension Tr. Fund Ibew v. Shaw Grp., Inc.*, 537 F.3d 527, 540-41 (5th Cir. 2008).  The contrast between the facts of this case and Plaintiffs' cases are instructive on this point.

In *Carlton v. Cannon*, the plaintiffs relied on information from nine confidential witnesses, one of whom had multiple conversations with all three individual defendants about problems at the defendant company's plant that were the subject of the challenged statements. 184 F. Supp. 3d. at 447-49.  In *Camelot Event Driven Fund v. Alta Mesa Resources, Inc.*, the complaint cited the accounts of two confidential witnesses who worked as production engineers at a company that developed oil and natural gas reserves and alleged that management forced engineers to depart from industry standards to create the appearance of additional reserves.  No. 4:19-CV-957, 2021 WL 1416025, at * 7 (S.D. Tex. Apr. 14, 2021) (Dkt. 40-4 at PDF pg. 10).  The complaint in *Alta Mesa* also cited an e-mail to the company's CEO that "seem[ed] to confirm" the confidential witness allegations.  *Id.*

None of the former employee allegations in this case provide similar insight into the actions or state of mind of the Individual Defendants at the time of the challenged statements.  Even accepting as true the former employee allegations regarding the progress of the Clarksville facility, the Complaint still "does not indicate how or when" the Individual Defendants "became aware of what the confidential source[s] allegedly knew."  *Shaw*, 537 F.3d at 42.

The Opposition's claims of "corroboration" do not change this conclusion because those claims are tenuous at best.  In *Six Flags*, for example, the "corroboration" for the former employee's allegations about the lack of progress on construction of a theme park in China was a photograph of the site "showing essentially no construction."  58 F.4th at 208-09.  Here, the only "corroboration" cited by the Opposition is (a) the former employee allegations, which Plaintiffs drafted and packaged together, and (b) Plaintiffs' characterization of Microvast's statements as "admissions" that the Company "ran out of money" and the facility "was not close to completion

13

by year-end 2023." *See* Dkt. 39 at 25.[4]  That is no corroboration at all.

Second, the Opposition reiterates the Complaint's mischaracterization of Defendant Wu's comment during a March 16, 2023 earnings call that he "saw all the equipment laying on the floor for FAT, factory testing" in China.  Dkt. 38-15 at PDF pg. 15.  The Opposition claims that this observation was "impossible" based on allegations about one of Microvast's equipment vendors for the Clarksville facility, Lyric, and the status of equipment delivery in August 2023.  *See* Dkt. 39 at 26 (citing ¶¶ 111, 114, 138).  But, as explained above in Section I.B., Wu did not specify that he saw the *Lyric equipment* ready for factory acceptance testing.  This is significant because Plaintiffs allege that approximately a third of the equipment came from vendors other than Lyric (¶ 108), and that by August 2023, approximately 10% of the total equipment had been delivered to the facility—but none from Lyric (¶ 114).  Accepting those allegations as true, Wu's statement is consistent with a vendor other than Lyric performing factory acceptance testing beginning in March and shipping equipment to arrive by August.  Wu's statement is only "impossible" if Wu was referring to equipment from Lyric and not another vendor.  There is no particularized factual basis for that assumption, and the Court is not required to accept it without question.

Third, the Opposition similarly relies on mischaracterizations and unwarranted deductions with respect to Defendant Smith's statements during the May 25, 2023 Investor Day call.  Plaintiffs argue that Smith was "at least severely reckless" when he stated that the facility was a "building with utilities" and that Microvast would start to set up a production line "as soon as it lands"—

---

[4] The Court is not required to accept as true Plaintiffs' self-serving interpretation of Microvast's announcement in April 2024 as an "admission" that the Clarksville facility was not finished by December 2023. *See Alaska Elec. Pension Fund v. Flotek Indus., Inc.*, 915 F.3d 975, 981 (5th Cir. 2019) (explaining that "conclusory allegations" and "unwarranted deductions … are not 'well-pleaded facts' for purposes of evaluating a complaint") (citation omitted).  Microvast made no such admission.  Quite the opposite—Defendants explained that equipment installation began in December 2023 and additional financing was necessary to continue that workstream.  ¶¶ 172-173.

meaning equipment from China. *Id.*; Dkt. 39 at 27; *see also* Dkt. 38-18 at PDF pg. 23. Plaintiffs also claim that Smith said equipment "is 'now being put on boats' and would arrive in Clarksville beginning in 'June.'" Dkt. 39 at 27; *see also* Dkt. 38-18 at PDF pg. 18.

Plaintiffs are grasping at straws. The Complaint alleges that the Clarksville facility was "partially electrified" in May 2023 (¶ 144) and Microvast installed "an electric substation breaker" prior to June 2023 (¶ 101). These allegations are inconsistent with Plaintiffs' argument that no utilities were installed on May 25, 2023. Plaintiffs further allege that Smith was severely reckless because, in May 2023, the Clarksville facility did not have utilities and floors and therefore could not support equipment installation "as soon as" the equipment landed. But Plaintiffs also allege that it takes at least eight weeks to ship equipment. *See* Dkt. 39 at 27 (citing ¶ 110). If equipment was "being put on boats through June, July, August, September" as Smith said, then the shipping time alleged by Plaintiffs means that installation would begin months later—and not in the facility's May 2023 condition. Finally, it is simply not true that Smith said equipment "would arrive in Clarksville beginning in 'June.'" He said no such thing. *See* Dkt. 38-18 at PDF pg. 18.

The Opposition's final attempt to show scienter for Smith's May 25, 2023 statements is based on the claim that Smith "was on many" calls with Lyric and that the "Complaint alleges what Smith learned on" those calls, "including that Lyric repeatedly missed its deadlines" for equipment delivery. Dkt. 39 at 34. Again, that is not accurate. The Complaint cites an allegation from FE-3 that Smith was "on at least some" calls with Lyric, but does not specify when Smith attended those calls and certainly does not allege what Smith learned as a result. *See* ¶ 201. Without those details, the Complaint does not raise a strong inference of scienter. *See, e.g.*, *In re ArthroCare Corp. Sec. Litig.*, 726 F. Supp. 2d 696, 720 (W.D. Tex. 2010) (rejecting a confidential witness's allegation that an individual defendant attended weekly staff meetings and thus "knew

15

what was going on" because the witness did not give "any meaningful details" to support the conclusion).

Fourth, the Opposition claims that statements by Defendants Wu, Smith, Webster, and Ward about a Q4 2023 target for the start of production at the Clarksville facility were made with scienter because "[s]everal Individual Defendants were present at the Clarksville Facility and/or spoke knowledgeably" about construction and equipment procurement. Dkt. 39 at 22. In other words, the Opposition argues that any defendant who speaks on a topic has scienter. That is simply not the law—and the Opposition does not cite any authority to support that baseless conclusion.

### C. The Court Must Reject New Scienter Theories in Plaintiffs' Opposition Brief.

The Court cannot consider "allegations and theories raised for the first time when responding to the motion to dismiss." *Carmon v. Carrington Mortg. Servs., LLC*, No. 4:22-CV-03534, 2023 WL 9184038, at *4 (S.D. Tex. Dec. 5, 2023), *report and recommendation adopted*, No. 4:22-CV-03534, 2024 WL 1476162 (S.D. Tex. Jan. 12, 2024). Plaintiffs brazenly violate this rule and the Court cannot credit any of Plaintiffs' new scienter allegations or theories.

**Core Operations Doctrine.** The "core operations" doctrine is a "limited exception" to the rule that an individual defendant's position within a company does not raise an inference of scienter. *Carlton*, 184 F. Supp. 3d at 478. In a "rare" case, an officer's position can raise an inference of scienter where there are allegations of "special circumstances," namely: "(1) a small company where it is more likely corporate executives are familiar with day-to-day operations; (2) transactions 'critical to the company's continued vitality'; (3) omitted information readily apparent to the speaker; and (4) statements by the corporate officer that are internally inconsistent." *Id.* at 479 (quoting *Loc. 731 I.B. of T. Excavators & Pavers Pension Tr. Fund v. Diodes, Inc.*, 810 F.3d 951, 959 (5th Cir. 2016)).

16

The Opposition cites the "core operations" doctrine as a basis for scienter with respect to the DOE grant statements and the Clarksville facility statements and tries to establish the requisite "special circumstances." *See* Dkt. 39 at 21-24, 29-30. The Complaint did not invoke the core operations doctrine as a scienter theory, *see* ¶¶ 177-218, and the Court must therefore reject it. *See* Order Granting Defendants' Motion to Dismiss at 25 n.11, *In re Digital Turbine, Inc. Sec. Litig.*, No. 1:22-CV-550-DAE (W.D. Tex. July 19, 2023), ECF No. 53 (rejecting the opposition's reliance on the core operations doctrine where it was not included in the complaint).

But even if the Court were to consider the core operations doctrine, it would not raise a strong inference of scienter in this case. The Complaint alleges that Microvast had over 1,200 employees worldwide as of March 2021 (¶ 67), which is much larger than the typical company to which the core operations doctrine applies—and Plaintiffs do not cite any case holding that the core operations doctrine applies by geographic location or division. *See, e.g.*, *Izadjoo v. Helix Energy Sols. Grp., Inc.*, 237 F. Supp. 3d 492, 515 (S.D. Tex. 2017) (refusing to apply the core operations doctrine to a company with 1,400 employees). Moreover, the information cited by Plaintiffs with respect to geographic location of employees predates the first challenged statement by almost 18 months and does not reflect Microvast's subsequent expansion of its U.S. operations.

Neither the DOE grant nor the Clarksville facility were critical to Microvast's continued vitality at the time of the challenged statements. The only "facts" cited on this question with respect to the DOE grant are that Microvast's stock price increased when the DOE decision was announced, and that the Company listed the grant as a "highlight" for Q3 2022. Dkt. 39 at 22. Regarding the Clarksville facility, Plaintiffs try to re-plead paragraph 216 of the Complaint and then cite to an exhibit to the Opposition to claim that the going concern qualification in April 2024 shows that the Clarksville facility was critical to Microvast's continued vitality. *See id.* at 30.

17

These new allegations do not show that the DOE grant and the Clarksville facility were critical to Microvast's continued existence. An increase in stock price after announcement of the DOE grant and a bullet point on a PowerPoint slide of "highlights" are not facts that show the loss of the DOE grant would have jeopardized Microvast's very existence. Similarly, the fact that Microvast announced a going concern issue in April 2024 does not show that the Clarksville facility was critical to the Company's vitality at the time of the challenged statements—March 2023 to December 2023. *See, e.g.*, *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 699–700 (5th Cir. 2005) (inferring scienter for statements about agreements that would have amounted to a "thirty-fold increase" in revenue and holding that the defendant company should have possessed information "casting doubt on its contracting partners' credibility" at the time of the challenged statements).

The third special circumstance necessary for the core operations doctrine to apply is that the omitted information was readily apparent to the speaker. The Opposition's discussion of this requirement in the context of the DOE grant does not cite any paragraphs in the Complaint to show which "speaker" was aware of the allegedly omitted information. *See* Dkt. 39 at 22. The paragraph of the Opposition that invokes the core operations doctrine as to the Clarksville facility statements does not discuss this factor. *See id.* at 29-30. And while the Opposition generally claims that various Individual Defendants were aware of information by virtue of their positions, that is not enough. *See Yoshikawa v. Exxon Mobil Corp.*, No. 3:21-CV-00194-N, 2022 WL 4677621, at *4 (N.D. Tex. Sept. 29, 2022) ("Plaintiffs cannot use the exception for 'readily apparent' information, without more, to bypass its failure to plead exactly that — that Defendants must have been aware of certain information by virtue of their positions within the company.").

Plaintiffs have also failed to establish the final requirement for the core operations doctrine to raise an inference of scienter for a challenged statement—internally inconsistent statements by

the corporate officer speaker.  Here again, the Opposition fails to make any argument regarding the Clarksville facility statements.  *See* Dkt. 39 at 29-30.  Plaintiffs argue only that Defendant Wu's statements in China about Microvast's intellectual property were different than what Microvast told the DOE in its grant application.  *Id.* at 21.  But Wu and Microvast are not one-in-the-same, and Plaintiffs have not shown an inconsistency in *Wu's statements* based on Microvast's grant application.  *See Diodes*, 810 F.3d at 959 (describing the fourth special circumstance as "*the defendant's statements* were internally inconsistent with one another") (emphasis added).

**Public Statements.**  The Opposition claims for the first time that the Court can infer scienter for Defendants Smith, Webster, Kelterborn, and Wu because they "spoke publicly about the DOE grant."  Dkt. 39 at 23.  This is not a basis for scienter at all. Accepting Plaintiffs' logic, any executive that makes even the briefest of statements on a topic would have scienter because they spoke publicly.  That proposition cannot be reconciled with the PSLRA or Rule 9(b), which both require particularized facts showing an intent to defraud with respect to each challenged statement and each speaker.  It is also not supported by the case cited in the Opposition.[5]

**Job Titles and Access to Information.**  Plaintiffs argue that Defendants Smith, Wu, and Webster "would have been aware" of alleged issues with contractors and mechanics liens at the Clarksville facility due to their roles at Microvast and cite cases holding that scienter is adequately pled based on allegations of access to information contradicting defendants' public statements.  *See* Dkt. 39 at 29.  Plaintiffs did not allege these theories of scienter in the Complaint.  At most,

---

[5] Plaintiffs' citation is taken out of context.  In *Roberti v. OSI Systems, Inc.*, a statement that "touched on" a "specific issue" with a company's scanning technology showed scienter because defendants asserted that they "were unaware of the alleged issues" with the technology.  No. CV 13-9174-MWF VBKX, 2015 WL 1985562, at *12 (C.D. Cal. Feb. 27, 2015) (Dkt. 40-4 at PDF pg. 119).  The court did not hold that an executive has scienter whenever they "touched on" a topic in a public statement.

19

the Complaint alleges that Smith and Wu visited the Clarksville facility and that Smith may have been on some calls with an equipment vendor in China, but those allegations are not specific to alleged issues with contractors. *See* ¶¶ 196-202. And the only scienter allegations in the Complaint directed towards Webster concerned allegedly "false exculpatory statements"—a theory abandoned by the Opposition. *See* Dkt. 37 at 28-29.

The Court should reject this new theory of scienter because it lacks specific factual support, as illustrated by one of the cases cited by the Opposition. The plaintiffs in *In re Venator Materials PLC Securities Litigation* alleged that the defendants made misleading statements about plans and progress for reconstruction of a manufacturing facility and restoration of production capacity. 547 F. Supp. 3d 624, 635-36 (S.D. Tex. 2021). The court held that the plaintiffs had alleged facts raising a strong inference of scienter based on allegations from the former director of supply chain who claimed that the individual defendants "received weekly progress reports" and "attended weekly meetings" regarding the facility's capacity and construction progress. *Id.* at 663. The allegations of the Complaint do not even approach the specificity of *In re Venator*—there are no particularized factual allegations that the Individual Defendants received regular progress reports or attended regular meetings regarding progress of construction at the Clarksville facility.

The Court should reject the new scienter allegations and theories in the Opposition.

## CONCLUSION

For these reasons, Defendants respectfully request that the Court dismiss the Complaint.

Dated: September 10, 2024

Respectfully submitted,

/s/ *Paul Bessette*

**KING & SPALDING LLP**
Paul R. Bessette
Texas Bar No. 02263050
Michael J. Biles
Texas Bar No. 24008578
Frances R. Fink
Texas Bar No. 24135291
500 West 2nd Street, Suite 1800
Austin, Texas 78701
Tel: (512) 457-2000
Fax: (512) 457-2100
Email: pbessette@kslaw.com
Email: mbiles@kslaw.com
Email: ffink@kslaw.com

*Attorneys for Defendants Microvast Holdings, Inc., Yang Wu, Craig Webster, Sascha Kelterborn, Shane Smith, and Zach Ward*

21

## CERTIFICATE OF SERVICE

I hereby certify that on this day, September 10, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Frances Fink*
Frances R. Fink