United States District Court
Southern District of Texas

**ENTERED**

April 07, 2026

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| KIM SCHELLING *et al.*, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MICROVAST HOLDINGS, INC., YANG WU, CRAIG WEBSTER, SASCHA KELTERBORN, SHANE SMITH, and ZACH WARD,<br><br>Defendants. | Case No. 4:23-cv-04565 |

**STIPULATION AND ORDER GOVERNING  DISCOVERY
MATTERS AND THE PRODUCTION OF  ELECTRONICALLY
STORED INFORMATION ("ESI PROTOCOL")**

Lead Plaintiffs Steve Rodgers and Gregory L. Dunham, and Named Plaintiff Randy Fonk, on behalf of the proposed class, and Defendants Microvast Holdings, Inc., Yang Wu, Craig Webster, Sasha Kelterborn, Shane Smith, and Zach Ward (collectively the "Parties") in the above-captioned action ("Action"), by their undersigned counsel, hereby stipulate and agree to the following procedures regarding the review and production of documents and Electronically Stored Information ("ESI") in discovery:

## I.   PURPOSE AND SCOPE

A.   <u>General</u>. The specifications set forth in this protocol ("ESI Protocol") shall govern the production of all hard copy documents and ESI by the Parties during discovery in the Action as a supplement to the Federal Rules of Civil Procedure and any other applicable orders and rules.

B.   <u>Scope</u>. Nothing in this ESI Protocol is intended to be an exhaustive list of discovery obligations or rights of a Party producing discoverable information ("Producing Party") or a Party requesting discoverable information ("Requesting Party"), or any other Party or non-party. This ESI Protocol does not address or resolve any objections to the scope of the Parties' respective discovery requests.

C.   <u>Limitation and Non-Waiver</u>. The Parties and their counsel do not intend by agreeing to this ESI Protocol to waive their rights to any protection or privilege, including the attorney-client privilege and work product doctrine, or their rights to object to any discovery requests. Nothing in this ESI Protocol should be construed to waive the rights of either Party to either raise discovery obligations potentially impacted by foreign data privacy and/or foreign blocking statues or object to them should they be raised.

1

### II.  PRODUCTION OF HARD COPY DOCUMENTS

A.   <u>TIFFs</u>. Hard copy documents should be produced in the form of single-page, Group IV TIFFs at 300 dpi. Each TIFF image should be named as its corresponding Bates number with a ".tif" extension. Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Bates numbers, confidentiality designations, and redactions should be burned into the TIFF image files. TIFF image files should be provided in a self-identified "Images" folder. The documents should be logically unitized (i.e., distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records) and be produced in the order in which they were kept in the usual course of business. If an original document contains color that is necessary to understand the meaning or content of the document, the document shall be produced as a color JPG image.

B.   <u>OCR Text Files</u>. Optical Character Recognition ("OCR") text files shall be provided as a single text file for each document, not one text file per page. Each file should be named with the beginning Bates number assigned to its corresponding document, followed by .TXT. OCR text files should be provided in a self-identified "Text" folder. To the extent a document is redacted, OCR text files for such documents shall not contain text for the redacted portions only. The settings to achieve the highest quality text, such as "auto-deskewing" and "auto-rotation," should be turned on during the OCR process.

C.   <u>Database Load Files/Cross-Reference Files</u>. The documents shall be provided with Concordance-compatible image and data load files (i.e., .OPT and .DAT files) using standard Concordance delimiters. The standard Concordance data load file delimiters are defined in Section IV.L of this ESI Protocol. The standard Concordance image load file shall provide the image file

path for each Bates numbered page. Concordance-compatible image and data load files (i.e., .OPT and .DAT files) shall be provided in a self-identified "Data" folder.

D. <u>Metadata Fields</u>. The documents shall be produced with at least the following searchable information in accompanying delimited data files: (a) FirstBates; (b) LastBates; (c) BegAttach; (d) EndAttach; (e) Pages; (f) Volume; and (g) Custodian. A Producing Party shall use a uniform description of a particular custodian across productions.

E. <u>Bates Numbering</u>. Each TIFF image shall be assigned a Bates number that: (a) is unique across the entire document production; (b) maintains a constant length across the entire production, i.e., padded to the same number of characters; (c) contains no special characters or embedded spaces; and (d) is sequential within a given document.

## III.     IDENTIFICATION AND COLLECTION OF ESI

A. <u>Sources, Search Methods, and Timing</u>: The Parties shall meet and confer in good faith in an effort to agree upon: (a) sources from which documents and ESI will be collected for review and production, including but not limited to, emails, attachments, database documents, shared files, locally-saved documents, mobile devices, text messages, instant messaging platforms, social media, and other relevant sources; (b) custodians whose documents and ESI will be searched; (c) search terms to be applied; and (d) timeframes for collection and review of documents and ESI. These discussions should take place promptly after service of requests for production of documents, and should continue as necessary to address issues that arise in the course of discovery. The Parties reserve the right to request inclusion of additional data sources, custodians, search terms, or timeframes whose identity is discovered via documents produced, testimony given, or otherwise, within a reasonable time of such discovery. The Parties shall limit sources, custodians, search terms, and timeframes to those reasonably likely to contain relevant, non-privileged

information, taking into account proportionality, burden, cost, and privacy.  The Parties shall meet and confer in good faith to attempt to resolve any disagreements about such additional requests.

B.    De-Duplication: The Parties shall use MD5 or SHA-1 hash values to identify duplicate ESI and to globally de-duplicate ESI at the family level, provided that such de-duplication does not remove substantive information, including but not limited to the identities of authors, recipients, and dates sent. In addition to preserving the author and recipient data within the produced image of each produced email thread, the metadata provided by the Parties for the produced version of each document withheld as a duplicate shall include an "All Custodians" field identifying all custodians who possessed exact copies of the document. The Parties will not de-duplicate loose electronic documents against email attachments. The Parties will not treat a document containing handwritten notes, highlighting, or any other markings as a duplicate of an unmarked version of the same document.

C.    Technologies. To the extent a Party chooses to search and review using a technology or methodology other than search terms (including, for instance, predictive coding) for culling purposes, that Party must disclose its intent to use that technology or methodology, the name of the review tool, and a reasonable description of the methods it proposes to use to exclude documents from review. No documents produced by a Party may be uploaded to any open system generative AI platform(s) that retains, trains on, or uses such documents outside this Action, without sufficient confidentiality and security safeguards in place pursuant to the Protective Order entered into for this matter, or where inputs could be used for  model training or other purpose(s) unrelated to this Action.

4

## IV.    PRODUCTION OF ESI

Compliance with the procedures set forth below shall constitute compliance with Federal Rule of Civil Procedure 34(b)(2)(E) concerning the production of documents and ESI.

A.    Form of Production. Except as otherwise provided in this paragraph, production of all ESI shall include single-page Bates-stamped TIFF images, accompanied by a load file with fielded data, a .txt file containing extracted text or OCR Text, and an image load file for the TIFFs. The Parties will produce Excel and/or CSV spreadsheets, PowerPoints, and audio or video recordings in native form, with one-page placeholder TIFF images as set forth in Section IV.E below. Redacted ESI, including Excel and/or CSV spreadsheets, PowerPoints, and audio or video recordings, shall be produced in native form with any redactions applied to that native form, and be produced as TIFF images accompanied by a load file with fielded data, a .txt file containing OCR'ed text, and an image load file for the TIFFs. Any portions of audio or video files not claimed to be privileged or otherwise exempt from production shall be produced in native format. The Parties will meet and confer to discuss a suitable production format for any document types not addressed herein.

B.    Document Image Format. Except as otherwise provided, all images must be produced as single-page, Group IV, 300 dpi TIFFs. The Producing Party shall produce color ESI documents in color.

C.    E-Mail Attachments. E-mail and attachments will be produced according to the specifications in subparagraph IV.A above. If the Producing Party redacts any part of an e-mail before producing it, OCR text may be provided in place of extracted text. E-mail attachments shall be processed as though they were separate documents, and the Data Load File shall include a field in which the Producing Party shall identify, for each e-mail, the Bates range of any attachments.

5

D.   <u>Text Messages and Instant Messages</u>. For text messages, instant messages, and the like, the Producing Party shall produce messages in 24-hour increment "slices" from a given chat string. The Receiving Party retains the right to identify specific 24-hour slices, after production, and request supplemental productions of additional 48-hour increments. Messages shall be produced only if such messages, or other messages in the same 24-hour window, (1) fall within the applicable date ranges for relevant requests agreed to by the Parties or ordered by the court, (2) include an agreed-upon search term, and (3) are deemed responsive during review. For text messages and instant messages between custodians, i.e. from one custodian to another in 1-on-1 or group messages, the Producing Party shall review all such messages for responsiveness regardless of the presence of any search term hits.

E.   <u>Native Files</u>. Native files will be produced in a separate folder on the production media. The Data Load File shall contain a field that identifies the file path of the native file corresponding to each document. For Excel and/or CSV spreadsheets, PowerPoints, and audio or video recordings, the TIFF image shall be a one-page placeholder that shows: (a) the name of the native file; (b) a unique Bates number; and (c) if applicable, a confidentiality designation. A Requesting Party shall exercise good faith effort to ensure that any copies or printouts of natively produced documents include a confidentiality legend, or cover page with a confidentiality legend, that matches the confidentiality designation the Producing Party applied to the document.

F.   <u>Embedded Files</u>. Image files and other files embedded in emails should be produced as part of the email. Bates ranges for these files shall be identified in the same manner as the Bates range of an e-mail attachment to the parent document.

G.   <u>Text Files</u>. For each document, a single text file shall be provided along with the image files and the metadata discussed in Section IV.P. The text file name shall be the same as the Bates

number of the first page of the document. File names shall not have any special characters or embedded spaces. Electronic text must be extracted directly from the native electronic file unless the document requires redaction, is an image file, or is any other native electronic file that does not contain text to extract (e.g., non-searchable PDFs). In these instances, a text file shall be created using OCR and shall be produced in lieu of extracted text. Extracted text shall be provided in UTF-8 text format.

H.    Redactions.  The parties may redact information in accordance with a Court-ordered protective order. Relevancy redactions shall not be permitted. In situations where redaction of information is required, such redactions must be made in a way that ensures that the integrity of the remaining text is preserved for OCR. Redactions must not obscure non-redacted text. Each redaction on a document shall be endorsed with the word "Redacted" along with the basis for such redaction. Redaction indicators must be OCR searchable such that the word "Redacted" will be encompassed by a search. Any redactions must be clearly visible on the face of the produced document, for example, the Parties should not use white boxes to make redactions on documents with a white background.

I.    Document Unitization. For files produced as TIFF images, each page of a document shall be electronically saved as an image file. If a document consists of more than one page, the unitization of the document and any attachments shall be maintained as it existed in the original when creating the image files.

The Parties shall produce a unitization file ("load file") for all produced documents in accordance with the following formatting:

OCR and Extracted Text Files (.TXT files):

J.    Single text file per document containing all of the document's pages.

- Filenames should be of the form: <Bates num>.txt where <Bates num> is the BATES number of the first page in the document.

- Text must be encoded in UTF-8.

Image Files:

- Single page per image.

- TIFF is Group IV compression, 300 dpi unless color or grayscale image is necessary, then .JPG would be acceptable.

K. Filenames should be of the form: "<Bates num>.<ext>," where <Bates num> is the BATES number of the page, and <ext> is the appropriate extension for the image format (e.g., .jpg, .tif).

Index Files:

L. "Concordance Default" delimited text file utilizing the following characters:

- o The "comma" delimiter is "¶" (020)
- o The "quote" delimiter is "þ" (254)
- o The "new line" delimiter is "®" (174)

M. First line must contain the column/field names (set forth in Appendix A).

- Every row must have the same number of columns/fields (empty values are acceptable).

- Text must be encoded in UTF-8.

The Parties agree to meet and confer to discuss unitization file/load file specifications if needed.

N. <u>Bates Numbering and Other Unique Identifiers</u>. For files produced as TIFF images, each page of a produced document shall have a legible, unique page identifier ("Bates Number") electronically burned onto the TIFF image in such a manner that information from the source document is not concealed or interfered with. There shall be no other legend or stamp placed on the document image unless a document qualifies for: (a) confidential treatment and is marked

8

Confidential pursuant to the protective order in this Action, in which case the Confidential designation may be placed on the document's image in a location that does not obscure any non-redacted information; or (b) redaction and is marked as Redacted pursuant to Section IV.H above. If a Bates number or set of Bates numbers is skipped in a production, the producing party will so note in a cover letter or production log accompanying the production.

O.    <u>Production Media</u>. Documents shall be produced via file transfer protocol or FTP (the "Production Media") unless the Parties mutually agree otherwise for a given production. All document productions shall be accompanied by a letter from the Producing Party identifying the production date and the Bates number range of the materials contained on such Production Media. The Production Media, which includes electronic folders produced via FTP, should be labeled with the: (a) Producing Party's name; (b) case name and number; (c) production volume; and (d) Bates number range.

P.    <u>Metadata</u>. With each produced ESI file, the Parties must produce the applicable metadata fields described in Appendix A to the extent available and technically achievable. The metadata must be produced in the following format: (a) an OpticonTM or IPRO® "cross reference file" which associates each Bates number with its corresponding single-page TIFF image file; and (b) a Data Load File containing Concordance delimited text that will populate fields in a searchable flat database environment, containing one line for each document and each of the applicable fields as described in Appendix A. Nothing in this ESI Protocol requires a Party to manually populate a metadata field in Appendix A (other than Custodian and MD5Hash) if such fields cannot be extracted from a document, provided that the Parties agree to comply with reasonable requests for metadata that exists but cannot be extracted from a document. For the avoidance of doubt, nothing

in this ESI Protocol shall act as a waiver of any objections that may exist to the production of such data.

Q.    Attachments. Attachments must be mapped to their parent by the Attachment Range. If a parent email or one of its attachments is produced, all members of its family, except for privileged documents, must be produced. When an attachment is withheld for privilege, the producing party shall produce a one-page TIFF image (or PDF if production format dictates) in place of the withheld attachment, correspondingly stating "Attachment Withheld-Privileged," and bearing a sequential BATES number within the family BATES range.  If any attachment to an email contains responsive content, then the cover email shall be produced for context, regardless of the cover email's responsiveness.

R.    Structured or Aggregated Data – Databases, Enterprise Systems, and Third-Party Cloud Systems. Consistent with the Parties' obligations under the Federal Rules of Civil Procedure, to the extent called for by any discovery request, the Producing Party shall promptly alert the Requesting Party and meet and confer to address the identification, production, and production format of any responsive data contained in a database, other structured or aggregated data source, or third-party cloud-based storage system. Prior to any such meet and confer, the Producing Party shall provide sufficient information to enable the Requesting Party to evaluate the Producing Party's proposed method and format of production.

S.    Mobile and Handheld Device Documents and Data. The Producing Party shall disclose the existence of mobile and handheld devices that are reasonably likely to contain responsive ESI, along with disclosing the use of messaging applications as well as the personal phone numbers.  The Parties agree to cooperate in identifying and collecting responsive ESI from

mobile, handheld devices, and messaging applications, including to resolve any accessibility issues and disclosing the collection tools and methods used.

T.   Hidden Data. The Parties shall process productions in a manner to ensure that all information, to the extent it exists in a document being produced, is visible, including:

- Correct dates subject to auto date (actual date information should be provided in place of auto dating where possible);

- Track changes (images must show all tracked changes in redlined or markup form);

- Hidden columns, rows, or worksheets of spreadsheets; and

- Hidden slides or speaker notes in PowerPoint presentations.

Where documents are not otherwise produced natively, all TIFF images shall display deletions, revisions, comments, speaker notes, and other rich data (including, but not limited to, hidden text, strikethrough text, the identity of the person making the deletion or revision and the date and time thereof, etc.) as displayed in the document, regardless of the display setting for this information as last saved by the custodian, to the extent reasonably possible.

U.   Time Zones. Producing Parties shall make reasonable efforts to process all ESI with a single time zone and a date and time setting that is consistent across all of the Parties' productions.

**V.   NON-ENGLISH DOCUMENTS**

To the extent that documents or ESI are produced with text in languages other than English, in whole or in part, the Producing Party shall produce such document, along with its metadata, in the original language in which it was written and collected. Such documents should be delivered with the correct encoding to enable the preservation of the document's original language.

11

## VI.    ENCRYPTION

To maximize the security of information while in transit, any media on which documents and ESI are produced may be encrypted by the Producing Party, and the Producing Party may transmit the encryption key or password to the Receiving Party under separate cover.

## VII.    EXCEPTION FILES

The Parties will use reasonable efforts and standard industry practices to address documents that present imaging or form production problems, including encrypted and/or protected files identified during the processing of ESI ("Exception Files"). At the earliest time such imaging or form production problems are identified, the Producing Party shall inform the Requesting Party, and the Parties may meet and confer regarding the volume of Exception Files and procedures that will be used to identify, access, and process Exception Files.

## VIII.   CONFIDENTIALITY

Confidentiality of documents produced will be designated in accordance with the protective order and any other applicable orders entered in this Action.

## IX.    PRIVILEGE AND WITHHOLDING LOGS

A.    Except as otherwise provided in this Section, a Producing Party shall provide a log of documents or other information the Producing Party has withheld from production on grounds that such documents contain information protected from disclosure under the attorney-client privilege, work product doctrine, or any other privilege or protection afforded by Rule 26 of the Federal Rules of Civil Procedure, Rule 501 of the Federal Rules of Evidence, or any other U.S. or foreign law, regulation, or statute with such law expressly identified ("Privileged Material"). Despite the foregoing, the following materials presumptively need not be logged:

1.    Communications on or after the date the first-filed Complaint in this Action

was filed on December 5, 2023 where such communications were with the undersigned counsel or members of their law firms that are related to this litigation; and

2.    Attorney work product created on or after December 5, 2023, which was created by any of the undersigned firms or agent of the undersigned firms that is related to this litigation.

Communications and work product claimed to be Privileged Material must be logged to the extent they were sent or distributed to a person other than the Party's outside counsel or the Party's experts, expert consultants, or professional vendors retained for the purpose of assisting counsel in this Action.

B.    This ESI Protocol shall be interpreted to provide privilege clawback protections allowed by Federal Rule of Evidence (FRE) 502(d).

C.    The Parties shall provide a privilege log and/or withholding log in Excel format that complies with Rule 26(b)(5) of the Federal Rules of Civil Procedure. The privilege log and/or withholding log shall address any documents or other information withheld in whole based upon a claim of privilege or other protection. The privilege log and/or withholding log shall be produced no later than thirty days following each production made on a rolling basis, or the end of substantial production, whichever is earlier, unless otherwise agreed by the Parties. All privilege logs and/or withholding log must be produced with sufficient time to permit the Requesting Party to review the privilege logs, meet and confer with the Producing Party about the logs, and bring any motion regarding the logs prior to the close of fact discovery. For each document withheld or redacted, the privilege log and/or withholding log shall contain the following information:

1.    A fixed sequential index/reference number, the sequence of which shall continue in subsequent logs;

13

2. The Bates number for documents withheld in whole or in part (i.e., redacted);

3. The document type (e.g., e-mail, Word Document, etc.), and for any document that includes an attachment an indication that the document has an attachment;

4. If the document is an email:

   a. The sent date and time (populated with metadata extracted from the "Date" and "Time" fields);

   b. The sender (populated with metadata extracted from the "Email From" field);

   c. The recipient(s) (populated with separate columns containing metadata extracted from each of the "Email To," "Email CC," and "Email BCC" fields) designating which, if any, are attorneys; and

   d. The subject line of the e-mail (populated with metadata extracted from the "Subject" field);

5. For loose ESI:

   a. The author (populated with metadata extracted from the "Author" field) designating which, if any, are attorneys;

   b. The creation date and last modified date (populated with metadata extracted from the "Created" field and "Last Modified" field); and

   c. The file name (populated with metadata extracted from the "File Name" field);

6. A notation identifying any legal personnel, such as an asterisk;

7. A description of the document sufficient to allow the Requesting Party to understand the subject matter and basis of the claim of privilege or protection; provided, however, that if the Parties are able to reach an agreement on categorical descriptions, a categorical description may be acceptable;

8. The basis of the privilege claimed, e.g., AC for Attorney/Client and WP for Work Product; and

9. If the basis is foreign law(s), the specific law(s) relied upon must be cited, including

14

the exact section, article, or provision and the relevant text of that provision, rather than merely identifying the name of the law. To the extent such concerns can be adequately ameliorated through redactions, the Parties shall produce such documents with redactions as opposed to withholding the entire document. For the avoidance of doubt, each Party reserves its right to challenge any decision by the other Party to withhold any documents or information on the basis of foreign laws, and neither Party waives any such rights by signing this Stipulation.

The Parties agree to confer in good faith should the need arise for disclosure of more information on the privilege log than the fields identified above, or disclosure of more information on the redaction descriptions discussed in Section IV.H.

## X.    NON-PARTY DOCUMENTS

A Party that issues a subpoena to a non-party ("Issuing Party") is responsible for producing to all other Parties any documents obtained pursuant to that subpoena in the form in which the documents were produced to the Issuing Party. The Issuing Party shall make such production to all other Parties promptly after receipt and no later than seven calendar days after receipt by the Issuing Party.

An Issuing Party receiving a production from a non-party may, alternatively, provide notice to the other Parties within seven calendar days indicating that it will not be able to provide the documents in the form the documents were produced and the reason that the Issuing Party is unable to do so. The Parties agree to meet and confer in good faith over any such non-party production issues in an attempt to resolve them and allow for the production to be made to the other Parties promptly. In no event shall the form of a non-party production provide a basis for the Issuing Party that received such production to deny the other Parties access to the production.

15

**XI.    MISC.**

A.      To the extent production of specific documents or ESI in the format described herein would be impractical or unduly burdensome, the Parties will meet and confer in good faith to attempt to agree on an acceptable format for production.

B.      This ESI Protocol may be modified by further agreement in writing by the Parties for good cause.

C.      The Parties shall negotiate in good faith to resolve any disputes under this ESI Protocol before presenting any disagreements to the Court.

IT IS SO STIPULATED THROUGH COUNSEL OF RECORD.

Dated: March 30, 2026

*/s/ Michael Dell'Angelo*
Michael Dell'Angelo (admitted *pro hac vice*)
Jon Lambiras (admitted *pro hac vice*)
Alex B. Heller
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Email: mdellangelo@bergermontague.com
Email: jlambiras@bergermontague.com
Email: aheller@bergermontague.com

Phillip Kim (admitted *pro hac vice*)
Jonathan Horne (admitted *pro hac vice*)
Jiaqi Chen (admitted *pro hac vice*)
**THE ROSEN LAW FIRM, P.A.**
275 Madison Avenue, 40th Floor
New York, NY 10016
Tel: (212) 686-1060
Email: pkim@rosenlegal.com
Email: jhorne@rosenlegal.com
Email: jiaqichen@rosenlegal.com

*Co-Lead Counsel for Co-Lead Plaintiffs*

16

*/s/ Paul R. Bessette*
Paul R. Bessette
Nate Bilhartz
Frances R. Fink
**KING & SPALDING LLP**
500 West 2nd Street, Suite 1800
Austin, Texas 78701
Tel: (512) 457-2000
Email: pbessette@kslaw.com
Email: nbilhartz@kslaw.com
Email: ffink@kslaw.com

*Counsel for Defendants Microvast Holdings, Inc.,*
*Yang Wu, Craig Webster, Sascha Kelterborn, and*
*Shane Smith*

*/s/ Kenneth P. Held*
Kenneth P. Held
**FLETCHER HELD, PLLC**
808 Travis Street, Suite 1553
Houston, Texas 77002
Tel: (713) 255-0414
Email: kheld@fletcherheld.com

*Counsel for Defendant Zach Ward*

**SO ORDERED.**

Signed this 7th day of April, 2026.

Nicholas J. Ganjei
United States District Judge

17

## Appendix A: Metadata Fields

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | ABC0000001 | First Bates number of native file document/email |
| LASTBATES | ABC0000005 | Last Bates number of native file document/email<br><br>**The LASTBATES field should be populated even for single page documents/emails |
| BEGATTACH | ABC0000006 | First Bates number of attachment range |
| ENDATTACH | ABC0000009 | Last Bates number of attachment range |
| CUSTODIAN | Doe, John | Email: Mailbox where email resided<br><br>Native: Name of individual or department from whose files the document originated |
| ALL CUSTODIAN | Doe, John; Doe, Jane | Contains all custodians that had the document in their data |
| FROM | Doe, John | Email: Sender<br><br>Native: Author(s) of document<br><br>**Semi-colon should be used to separate multiple entries |
| TO | Doe, John; JaneD [mailto:JaneD@microvast.com] | Recipient(s) |
| CC | JaneD [mailto:JaneD@microvast.com] | Carbon copy recipient(s) |
| BCC | Doe, John; Doe, Jane | Blind carbon copy recipient(s) |
| SUBJECT | Board Meeting Minutes | Email: Subject line of email<br><br>Native: Title of document (if available) |
| FILE_NAME | BoardMeetingMinutes.doc | Native: Name of original native file, including extension |
| DATE_SENT | 10/12/2010 | Email: Date the email was sent<br><br>Native: (empty) |

18

| Field Name | Sample Data | Description |
|---|---|---|
| TIME_SENT/TIME_ZONE | 07:05 PM GMT | Email: Time the email was sent/time zone in which emails were standardized during conversion<br><br>Native: (empty) |
| TIME_ZONE | GMT | The time zone in which emails were standardized during conversion<br><br>Email: Time zone<br><br>Native: (empty) |
| NATIVE LINK | D:\001\ABC0000001.msg | Hyperlink to email or native file document<br><br>**The linked file must be named per the FIRSTBATES number |
| MIME_TYPE | application/msword | The content type of an email or native file document as identified/extracted from the header |
| FILE_EXTEN | MSG | The file type extension representing the email or native file document; will vary depending on format |
| AUTHOR | Jane Doe | Email: (empty)<br><br>Native: Author of document |
| LAST_AUTHOR | Jane Doe | Email: (empty)<br><br>Native: Last Author of document |
| DATE_CREATED | 10/10/2010 | Email: (empty)<br><br>Native: Date the document was created |
| TIME_CREATED/ TIME_ZONE | 10:25 AM GMT | Email: (empty)<br><br>Native: Time the document was created including time zone |
| DATE_MOD | 10/12/2022 | Email: (empty)<br><br>Native: Date the document was last modified |
| TIME_MOD/TIME_ZONE | 07:00 PM GMT | Email: (empty)<br><br>Native: Time the document was last modified, including time zone |

19

| Field Name | Sample Data | Description |
|---|---|---|
| DATE_ACCESSD | 10/12/2022 | Email: (empty) <br><br>Native: Date the document was last accessed |
| TIME_ACCESSD/TIME_ZONE | 07:05 PM GMT | Email: (empty) <br><br>Native: Time the document was last accessed, including time zone |
| PRINTED_DATE | 10/12/2022 | Email: (empty) <br><br>Native: Date the document was last printed |
| HIDDEN_CONTENT | Excel Comments; Excel Hidden Columns; Excel Hidden Worksheets; PowerPoint speaker notes | Indicates whether hidden content is present in Microsoft Excel, PowerPoint, or other files |
| FILE_SIZE | 4,572 KB | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty) <br><br>Native: Path where native file document was stored including original file name |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name <br><br>Native: (empty) |
| INTMSGID | <012805c2c71b$75977050$cb8306z1@MSN> | Email: Unique Message ID <br><br>Native: (empty) |
| MD5HASH | z131dd02c5e6eec4693d9a069 8cyz95c 2fcab58712467eab4004583eb 8fb7f65 | MD5 hash value of document |
| EXTRACTED TEXT PATH | TEXT/001/EDC0000001.txt | Path to extracted text of native file |
| TEXT/CHAT TYPE | SMS, MMS, Teams, Slack | Type of text or chat |
| PARTICIPANTS | John Doe, 281-491-9505 | Participants of text/chat conversation, represented by either their phone number, name, or both |
| ITAR | ITAR | Contains ITAR material |

20

Metadata fields shall be limited to those reasonably necessary for document identification and review.